**Di VOSTA RENTALS, INC.,**
Plaintiff-Appellee,

v.

**Emmett C. LEE, Jr., Colonel, Corps of Engineers, etc., et al., Defendants-Appellants.**

No. 73–1893.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1973.

Rehearing Denied Dec. 4, 1973.

Lawrence E. Shearer, Carl Strass, Attys., Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Robert N. Reynolds, Asst. U. S. Atty., Miami, Fla., Wallace H. Johnson, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendants-appellants.

James E. Weber, Douglas C. Fulton, West Palm Beach, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The question presented to us for review in this case is whether the district court erred in ordering the Secretary of the Army to issue a permit to fill navigable waters to Di Vosta Rentals, Inc. (hereinafter referred to as Di Vosta). To answer the question, we must examine the scope of authority granted to the Secretary by § 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403,[1] and the scope of review

---

1. 33 U.S.C. § 403 provides:
    § 403.
    The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter

which the district court should have used to test the validity of the Secretary's refusal to issue a permit. After receiving stipulated evidence and trial briefs from the parties, the district court ordered defendants to issue a permit to the plaintiff. We reverse.

## I

On February 3, 1967, Di Vosta acquired title to a parcel of land fronting on Lake Worth, Florida. On September 10, 1969, having paid $18,221 to the Trustees of the Internal Improvement Trust Fund of the State of Florida, Di Vosta acquired title to .614 acres of submerged land adjoining its lakeside property. Di Vosta's purpose, which did not become known to the government agencies involved until much later, was to build an apartment building on the property. To make the land suitable for this project, Di Vosta had to obtain fill permits for the submerged land from both the state and federal governments. Di Vosta first applied to the Trustees for a permit. They refused. Di Vosta successfully sued in the state courts of Florida to compel issuance of the permit, which was issued July 23, 1970.

Di Vosta applied to the Corps of Engineers for a dredge and fill permit on July 31, 1970. After distributing public notice of the request, the Corps received objections from private citizens, the Palm Beach County Board of County Commissioners and several federal agencies.

The Corps informed Di Vosta of the objections and offered the opportunity to present arguments in support of the project. Di Vosta did so in late January, 1971. This information was sent to the objecting federal agencies, and in March, the Corps was informed that these agencies remained opposed to the permit. Negotiations continued throughout 1971, but all parties held

staunchly to their positions. The District Engineer informed Di Vosta on April 19, 1972, that its application for a permit had been denied because the permit:

1. Is not believed to be consistent with current public interest in the preservation of man's natural environment as enunciated in Public Law 91-190,

2. Would not involve, a water-dependent development, and

3. Is opposed by the Department of the Interior and the Environmental Protection Agency and was approved by the Board of Trustees of the Internal Improvement Trust Fund only after an order from circuit court.

Di Vosta filed suit in district court on May 25, 1972, and the court entered its final judgment March 16, 1973, requiring the federal defendants to issue the fill permit to Di Vosta. The defendants filed a notice of appeal April 19, 1973.

## II

The Secretary's decision to deny the permit must be examined in relation to the applicable institutional framework. Section 10 of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403, is a total ban on all obstructions of navigable waters, subject only to exceptions specifically authorized by the Secretary of the Army. The Act allows the Secretary wide discretion in deciding whether to issue a permit. In fact, it places no restrictions on the decision at all. Nevertheless, the authority of the Secretary to grant or deny permits is not unlimited. His decision may be reviewed by a court. 5 U.S.C. § 706. Zabel v. Tabb (5 Cir. 1970) 430 F.2d 199, cert. denied, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971). See, Association of Data Processing Service

---

or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

Organization, Inc. v. Camp, 397 U.S. 150, 156–157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

██ A reviewing court is limited in its review of an agency decision, however. Its function is not to determine the *correctness*, in some ultimate sense, of an agency's actions. A reviewing court is limited to determining only the *legality* of the challenged action. If an agency acts within the scope of its authority, and if that authority is consistent with the Constitution, then a court may not overturn the agency's decision. St. Joseph Stock Yards Company v. United States, 298 U.S. 38, 51, 56 S.Ct. 720, 80 L.Ed. 1033 (1936).

██ In § 10, Congress has left certain decisions within the discretion of the Secretary of the Army. A court may review the legality of the Secretary's exercise of discretion, American School of Magnetic Healing v. Mc-Annulty, 187 U.S. 94, 108, 23 S.Ct. 33, 47 L.Ed. 90 (1902), but may not substitute its judgment for that of the Secretary. Federal Reserve System v. Agnew, 329 U.S. 441, 444, 67 S.Ct. 411, 91 L.Ed. 408 (1947).

Congress has codified the rules which control court review of agency action. In the Administrative Procedure Act, 5 U.S.C. § 701 et seq., Congress set forth specific guidelines which courts are obliged to use in reviewing agency decisions. The primary question before this court is one of the applicability of the various subsections of 5 U.S.C. § 706,[2] setting standards for the judicial review of administrative action.

██ The district court held 5 U.S.C. § 706(2)(E) to be applicable to the Secretary's decision to refuse a permit. That section allows a court to set aside agency action found to be "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute . . . ."

The defendants argue that subsection (E) is not applicable because the proceedings herein do not fall into either of the two categories of that subsection. They further argue that the only relevant subsection of § 706(2) is § 706(2)(A), providing that agency action may be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."

██ Defendants' position is unexceptionable. At no time has Di Vosta argued that the Secretary's actions fall into either of the two categories of subsection (E), proceedings under 5 U.S.C. §§ 556 and 557, or decisions "otherwise reviewed on the record of an agency hearing provided by statute." Actions which do not fall within either of these categories are not subject to the "substantial evidence" test. Camp v.

2. 5 U.S.C. § 706 provides:
§ 706.
To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
    (1) compel agency action unlawfully withheld or unreasonably delayed; and
    (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B) contrary to constitutional right, power, privilege, or immunity;
    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
    (D) without observance of procedure required by law;
    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L. Ed.2d 106, 111 (1973).

Di Vosta's citation of General Motors Corporation v. United States, (6 Cir. 1963) 324 F.2d 604, is unavailing, since that case involved a tariff-setting proceeding before the Interstate Commerce Commission. The G.M. case was based on the landmark case of Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Concededly, proceedings before both the I.C.C. and the N.L.R.B. are subject to the "substantial evidence" requirement. But decisions of the Secretary of the Army under 33 U.S.C. § 403 are not.

Di Vosta argues that the following language in Zabel v. Tabb, *supra,* indicates that the Secretary's decision is subject to "substantial evidence" review.

> The question presented to us is whether the Secretary of the Army can refuse to authorize a dredge and fill project in navigable waters for factually substantial ecological reasons even though the project would not interfere with navigation, flood control, or the production of power. 430 F.2d at 203.

The question of the proper standard of review was not before the court in *Zabel.* The only question presented was whether the Secretary could consider ecological factors in making his decision on the granting of a permit. *Id.* The court answered this question in the affirmative. The *Zabel* opinion cannot be read to include any holding with respect to the proper *scope* of judicial review of the Secretary's decision.

■ Di Vosta also argues that by submitting the case to the district court on stipulated evidence, the defendants agreed to *de novo* review of the Secretary's decision. This contention is totally without merit. Parties may not agree to expand the jurisdiction of the federal courts. American Fire & Casualty Company v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

III

Under different circumstances, it might be advisable to end the opinion at this point and simply remand the case to the district court for a determination of the issue of whether the Secretary's action in denying the permit was "arbitrary and capricious" within the meaning of 5 U.S.C. § 706(2)(A). We feel, however, that additional litigation in the district court would be a waste of resources for all concerned. This case was submitted to the district court on stipulated documentary evidence and written trial briefs. Although this circumstance does not change this court's scope of review, it does affect our disposition of the case. For the reasons explained below, we are convinced that the Secretary's action was not arbitrary or capricious. Believing that nothing that might happen in the district court on remand could change our view of the case, we reverse, not for further proceedings not inconsistent with this opinion, but with directions to dismiss the complaint. Because we are making a final disposition of this case in this opinion, it is necessary to deal with several other points raised by the parties.

IV

■■ Appellants point out that the United States has been included as a defendant in this case, and that this inclusion is improper under the doctrine of sovereign immunity. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Di Vosta fails to present any argument or authority to the contrary. It is well established that the United States may not be made a defendant without its consent. There is no consent here. Therefore, the district court had no jurisdiction to bind the United States in its decree. Cohens v. Virginia, 6 Wheat. (19 U.S.) 264, 411–412, 5 L.Ed. 257 (1821).

V

■ DiVosta appears to argue that the Secretary improperly considered

objections from other government agencies in making his decision on a permit. Although Di Vosta's brief is not as lucid as it might be, this argument is apparently based on two grounds: the objections of other agencies were too vague to allow Di Vosta to respond properly and the receipt of written objections from other agencies violates the hearsay rule. Both of these arguments are without merit. An examination of the record reveals that the objections from other agencies were put in terms sufficiently explicit to give Di Vosta an opportunity to try to refute them. At every turn, Di Vosta was given sufficient opportunity to communicate with these agencies in an effort to change their recommendations. In no respect can Di Vosta be said to have been deprived of its right to due process of law. As to the apparent hearsay objection raised in Di Vosta's brief, we have been cited to no case which holds that in a proceeding such as this, the Secretary is to be held to the rigid formalities of the hearsay rule. Nor do we think such a citation exists.

## VI

Having determined that the proper standard for review of the Secretary's decision is whether it was arbitrary or capricious, we turn to a review of the record. This review demonstrates that the Secretary's action may not be set aside under 5 U.S.C. § 706(2)(A).

After receiving Di Vosta's application for a permit, the Corps made a public announcement of the application. This it was required to do by 33 C.F.R. § 209.120(f)(1). Several replies indicated no objection to the project. But the opinion was not unanimous.

Three bureaus of the Department of the Interior opposed the permit application. The Bureau of Sport Fisheries and Wildlife of the Fish and Wildlife Service objected for three reasons: (1) "Lake Worth has been severely damaged by dredging and filling in the past and will be a prime candidate for possible habitat rehabilitation studies in the future. Further filling and destruction of submerged marine bottoms will not be of any benefit to Lake Worth." (2) "To preserve esthetic qualities and to allow for future restoration of the marine biological environment, further unnecessary filling in Lake Worth should be prohibited." (3) Having been advised that Di Vosta had no plans to construct a building on the fill, the bureau felt that the fill project "would be an unnecessary and irretrievable commitment of the marine environment involved and should not be allowed." (Appendix page 77). The Bureau of Outdoor Recreation stated that, "Although this application for permit to fill does not specifically allow the development of appurtenant structures, it is felt that it will nevertheless encourage this kind of development at some future date; should this happen, the existing aesthetic qualities of Lake Worth would be degraded and any attempts to restore the lake to its natural condition would become increasingly difficult." Also, the Federal Water Quality Administration opposed the project "because it consists of the destruction of a natural shoreline and shallow water areas." (Appendix pp. 78–79). The field representative to the Secretary of the Interior for the Southeast Region transmitted these objections to the District Engineer of the Corps of December 21, 1970, adding that, based on the objections of the three bureaus, the department itself recommended that the permit application be denied. (*Id.*)

In addition to these objections by federal agencies, several objections from private citizens were received, as well as an objection from the Board of County Commissioners of Palm Beach County. In accordance with the policies set forth in a memorandum of understanding between the Secretary of the Interior and the Secretary of the Army promulgated July 13, 1967, (see 33 C.F.R. § 209.-120(d)(11)), the Corps attempted to mediate the differences between the Department of the Interior and Di Vosta by acting as a conduit for information.

It forwarded the objections of the Department of the Interior to the plaintiff, received arguments in support of the permit application from the plaintiff, and forwarded these arguments to the Department of the Interior. This exchange occurred during December, 1970, and January, 1971. In a letter dated February 24, 1971, the Environmental Protection Agency stated that it opposed the application for the following reasons: (1) The lake is a "valuable estuarine area" that "has some signs of degradation" but "is not beyond recovery." Granting of the fill permit "will make that recovery more difficult and protracted." (2) "It is the opinion of the Environmental Protection Agency that the only way in which water quality values and the water use classification of Lake Worth can be preserved is to prevent any further development of land within the Lake below the mean high water line." (3) The portion of the Lake to be filled is without vegetation, but it may be of some value to the marine ecosystem. (4) "The development by Di Vosta Rentals is only a part of an overall encroachment on the shallow water areas of Lake Worth and it is to this overall encroachment that EPA objects."

After receiving plaintiff's written arguments in favor of its application, the Department of the Interior replied that it remained opposed to the project. The field representative to the Secretary for the Southeast Region reiterated his position and added that, having learned that an apartment building was planned for the area, the Bureau of Sport Fisheries and Wildlife concluded that such a project would put a further strain on already heavily overloaded sewerage facilities in the area.

A meeting was held between Di Vosta and a representative of the Bureau of Sport Fisheries and Wildlife in October, 1971, but in January, 1972, the bureau indicated that it was unconvinced that the permit should be granted. It added the following objection: "This Bureau strongly objects to the filling of bay bottoms for residential purposes where there is no demonstrated overall public need, where acceptable alternatives are not considered, and where the proposed works are not water dependent."

We are unable to find fault with the Corps' processing of Di Vosta's application. It was consistent with the applicable regulations, 33 C.F.R. § 209.120, and with the three major pieces of legislation which set policy in this area, the National Environmental Policy Act of 1969, 42 U.S.C. § 4331–4347, the Fish and Wildlife Coordination Act of 1934, 16 U.S.C. § 661–666c, and the Rivers and Harbors Appropriation Act of 1899. The Corps properly considered environmental factors in making its decision. Zabel v. Tabb, *supra*. It properly consulted other agencies in making its decision. United States v. Moretti, 5th Cir. 1973, 478 F.2d 418. See also Bankers Life and Casualty Company v. Village of North Palm Beach, 469 F.2d 994 (5 Cir. 1972).

For these reasons, we do not feel that the Secretary's denial of Di Vosta's permit application can be said to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We have not, in this opinion, reiterated all the evidence in support of Di Vosta's application. Evidence to support a conclusion opposite to that reached by the Secretary was present in the record. But we do not feel that the evidence in opposition was so overwhelming as to make the Secretary's decision unreasonable. Whether or not the objections from other agencies qualify as "substantial evidence," within the meaning of 5 U.S. § 706(2)(E), they are sufficient to shield the Secretary's decision from attack under § 706(2)(A).

Sufficient evidence has been presented to us that, under the provisions of § 706(2)(A), the Secretary's order denying the permit was lawful. In such a situation, we see no need to burden the parties with further litigation in the

district court. Bankers Life and Casualty Company v. Village of North Palm Beach, *supra.*

The judgment of the trial court is vacated and the case is remanded to the trial court with directions to dismiss the suit.

Vacated and remanded with directions.