USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1784 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. THE MEMBERS OF THE ESTATE OF LUIS BOOTHBY, ET AL., Defendants, Appellants. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ __________________________ Jose Enrique Colon Santana for appellants. __________________________ Silvia Carreno Coll, Assistant United States Attorney, with ___________________ whom Guillermo Gil, United States Attorney, was on brief, for ______________ appellee. __________________________ February 14, 1994 __________________________ SELYA, Circuit Judge. Is a houseboat a house or a SELYA, Circuit Judge. _____________ boat? That, in the abstract, is the enigma posed by this case. Fortunately, we need not answer it directly. As a court of law, we leave such metaphysical rumination to the disciples of Jacques Derrida, and address ourselves instead to the more tractable question of whether the Army Corps of Engineers (the Corps) properly deemed two particular houseboats to be permanently moored structures within the meaning of section 10 of the Rivers and Harbors Act, 33 U.S.C. 403 (1988). The district court ruled that the Corps did not act arbitrarily or capriciously either in subjecting the houseboats to the permitting requirements of section 10 or in refusing to issue permits. We affirm. I I La Parguera is a bay in Puerto Rico acknowledged by all interested agencies and groups to have great beauty and ecological value. To slow deterioration of the environment, Puerto Rico and the Corps signed a joint memorandum of understanding (the J-Mem) in 1978. Among other things, execution of the J-Mem brought a screeching halt to construction of stilthouses along the shore. There are, of course, several ways to skin a cat or, more to the point, to provide lodging in a picturesque setting. Thus, after the moratorium on new construction took effect, numerous houseboats sprouted in the bay. In 1987, the Corps informed the owners of these houseboats that they were subject to 2 the permitting requirements of section 10. Some houseboat owners, including the appellants, applied for after-the-fact permits, but their applications were denied. On June 5, 1990, the Corps issued a final order directing all remaining houseboats to move.1 As a test case to establish its authority, the government brought suit to enforce the denial of permits to four houseboat owners. It prevailed below. See United States v. Seda ___ _____________ ____ Perez, 825 F. Supp. 447 (D.P.R. 1993). Two of the four houseboat _____ owners, Pedro Monzon and the estate of Luis Boothby, prosecute this appeal. II II Section 10 of the Rivers and Harbors Act, 33 U.S.C. 403, outlaws any unauthorized "obstruction" to the navigable capacity of the waters of the United States.2 Its second clause ____________________ 1Appellants failed to seek direct review of this order in a timely fashion. Yet they seek review indirectly, for they are resisting the agency's effort to obtain a determination of legal enforceability by arguing that the agency lacked jurisdiction over their vessels. Notwithstanding this odd procedural configuration, we think that appellants can assert their claim. Although exhaustion of administrative remedies is often a prerequisite to judicial review of administrative action, jurisdictional questions are generally not waived, because an action taken by an agency lacking jurisdiction is a nullity. See ___ Manual Enterprises v. Day, 370 U.S. 478, 499 n.5 (1962). __________________ ___ 2The statute provides in pertinent part: The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other 3 contains a long, non-exclusive enumeration of things that are presumed to constitute obstructions. See United States v. ___ ______________ Republic Steel Corp., 362 U.S. 482, 486-87 (1960); Sierra Club v. ____________________ ___________ Andrus, 610 F.2d 581, 594-97 (9th Cir. 1979), rev'd on other ______ _____ __ _____ grounds, 451 U.S. 287 (1981). The statutory list casts a very _______ wide net. Included in this list is the term "other structures" a term defined in the Corps' regulations to cover a "permanent mooring structure." 33 C.F.R. 322.2(b) (1993). We believe that this regulation lawfully can be applied to houseboats that are found to constitute permanently moored vessels. At least two courts agree. See United States v. Boyden, 696 F.2d 685, 687 ___ ______________ ______ (9th Cir. 1983); United States v. Oak Beach Inn Corp., 744 F. _____________ ____________________ Supp. 439, 444 (S.D.N.Y. 1990). III III The standards of review are stringent, and present high hurdles to parties challenging fact-based decisions of an administrative agency. In scrutinizing administrative action, a reviewing court is free to correct errors of law, but, otherwise, the court is limited to a search for arbitrary or capricious behavior. See 5 U.S.C. 706(2)(A); see also Town of Norfolk v. ___ ___ ____ _______________ U.S. Army Corps of Engineers, 968 F.2d 1438, 1445-46 (1st Cir. _____________________________ 1992); United States v. Cannons Engineering Corp., 899 F.2d 79, _____________ _________________________ ____________________ structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army . . . . 33 U.S.C. 403 (1988). 4 84 (1st Cir. 1990). In this search, courts are directed to defer heavily to the agency within the agency's sphere of expertise. See Chevron USA v. Natural Resources Defense Council, 467 U.S. ___ ___________ __________________________________ 837, 842-45 (1984). When, as now, a district court, after itself taking evidence, upholds agency action, the hurdle is higher still; factbound determinations of the district court are reviewable only for clear error. See, e.g., Roland M. v. Concord Sch. ___ ____ _________ _____________ Comm., 910 F.2d 983, 990 (1st Cir. 1990), cert. denied, 499 U.S. _____ _____ ______ 912 (1991). That precept has particular pertinence here, for there is no doubt that the salient determinations in this case are fact-intensive. See Boyden, 696 F.2d at 688-89 ___ ______ (characterizing the question of whether certain houseboats are "permanent mooring structures" as one of fact); Oak Beach, 744 F. _________ Supp. at 444 (same).3 IV IV Appellants' depth charges are aimed, in the main, at the district court's finding that their houseboats should be ____________________ 3To be sure, the Fifth Circuit has suggested that "the imprecise statutory language of section 10 leaves the Corps with quasi-legal authority to determine what `effects' constitute ___________ `obstructions.'" Vieux Carre Property Owners v. Brown, 875 F.2d ____________________________ _____ 453, 463 (5th Cir. 1989) (emphasis supplied), cert. denied, 493 _____ ______ U.S. 1020 (1990). But this suggestion, even if carried to its logical extreme, does not militate in favor of a less deferential standard of review. While the key statutory findings are best viewed as mixed questions of law and fact, they are fact- intensive and, therefore, at least in this circuit, they are subject to clear-error review. See In re Howard, 996 F.2d 1320, ___ _____________ 1328 (1st Cir. 1993) (explaining that, if mixed fact-law questions are fact-dominated, they are ordinarily subject to review under the clearly erroneous standard); Roland M., 910 F.2d _________ at 990-91 (similar). 5 considered as stationary structures. Much of this bombardment targets the court's subsidiary finding that the houseboats' "seaworthiness is doubtful, to say the least." Seda Perez, 825 __________ F. Supp. at 452. Appellants argue that the Corps' inspector was not competent to make an evaluation of navigability, and that the Corps itself erred in allowing environmental factors and other impermissible considerations to enter the decisional calculus. They also argue that the record as a whole cannot support a finding of doubtful navigability -- stressing that the houseboats were certified as navigable by the Puerto Rico Department of Natural Resources (DNR), that the houseboats had acquired the requisite nautical accoutrements, and that the houseboats occasionally raised anchor and cruised the bay. Because we are in substantial agreement with the lower court and see no profit in trolling the same waters, we do not wax longiloquent. In our view, three decurtate observations, largely evocative of the district court's reasoning, place the assigned errors into bold relief and demonstrate that appellants' depth charges miss the mark. First: Navigability does not have the same meaning for First: _____ all purposes; hence, the DNR's determination of navigability, in a markedly different context, cannot be accorded decretory significance with regard to the Corps' permitting process. The district court was free to consider, and, ultimately, to rely upon, the contrary evidence before it. Appellants contest this point both in the abstract and 6 in the particular. They save their loudest outcry for the district court's acceptance of the opinion testimony offered by a Corps official lacking specialized nautical training. We are unimpressed with this line of argument. Under the Federal Rules of Evidence, a trial judge has broad latitude in determining whether a proffered expert has suitable qualifications to give opinion testimony relating to a given topic. See United States ___ _____________ v. Ladd, 885 F.2d 954, 959-60 (1st Cir. 1991); Marshall v. Perez- ____ ________ ______ Arzuaga, 828 F.2d 845, 851 (1st Cir. 1987), cert. denied, 484 _______ _____ ______ U.S. 1065 (1988). And, moreover, a witness need not always possess a particular degree or set of educational qualifications in order to offer opinion testimony. See, e.g., United States v. ___ ____ _____________ Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) (witness with _______ "extensive practical experience in the field" allowed to testify as an expert despite lack of "formal schooling"); Marshall, 828 ________ F.2d at 851 (similar); Grain Dealers Mut. Ins. Co. v. Farmers ____________________________ _______ Union Coop. Elevator & Shipping Ass'n, 377 F.2d 672, 679 (10th _______________________________________ Cir. 1967) (similar); see also Fed. R. Evid. 702. Given this ___ ____ flexible standard, we cannot fault the district court for electing to credit the opinion of a Corps official familiar with both the Corps' regulations and the vessels at issue. Such a person is highly qualified to testify regarding the application of those regulations to those vessels, even if she is not a naval architect. See Boyden, 696 F.2d at 688. ___ ______ It is also appropriate to note that the district court did not embrace this testimony in a vacuum. The district judge 7 also drew on testimony from a court-appointed expert, whose qualifications have not been assailed, as well as on the photographs and other documentary evidence. We, ourselves, have reviewed the administrative record, the trial transcript, and the exhibits. Notwithstanding the DNR certification, we think that the subsidiary finding of doubtful navigability is amply supported, and that the district court's conclusions respond to the weight of the evidence. Because we are not left with a "strong, unyielding belief that a mistake has been committed," Cumpiano v. Banco Santander, 902 F.2d 148, 152 (1st Cir. 1990) ________ _______________ (outlining test for clear error), we uphold the finding that the houseboats were of dubious seaworthiness. Second: Appellants berate the district court for Second: ______ considering motive, intent, and environmental factors, rather than limiting its inquiry strictly to capacity to navigate. But navigability is only one element in the statutory assessment. Since neither the statute nor the regulations place restrictions on the Corps' discretion to issue permits, see Di Vosta Rental, ___ ________________ Inc. v. Lee, 488 F.2d 674, 677 (5th Cir. 1973), cert. denied, 416 ____ ___ _____ ______ U.S. 984 (1974), the agency was fully entitled to take into account other pertinent factors. We are confident that, under this standard, motive and consequence qualify. And we hasten to add that the district court's findings as to appellants' motives are solidly rooted in the record. In sum, the court spotted a pattern of deceit: the houseboats were put in place to circumvent the ban on 8 stilthouses; they were primarily intended to serve as vacation homes, pure and simple; the gadgets attached to them over time were meant to camouflage the scheme rather than for seafaring per ___ se; and the occasional jaunts about the bay represented __ perfunctory attempts to satisfy the terms of the statute. See ___ Seda-Perez, 825 F. Supp. at 449 n.2, 451-52. Taking these facts __________ as warrantably found by the trier, one can hardly fault agency officials for being concerned more with intent to navigate than with capacity to navigate. After all, if an owner does not intend to cast off, his or her vessel can be said to be "permanently moored" in the relevant sense, notwithstanding the theoretical possibility that the craft is capable of navigation. Nor can the agency's attention to the impact of the houseboats on the ecosystem of La Parguera be faulted. Agency officials understood what appellants evidently do not: that the Rivers and Harbors Act has been transformed into an instrument of environmental policy. This transformation occurred long ago. Indeed, Justice Douglas could hardly have been more plain: the Act must be read "charitably," with full consideration for the public purposes to be served. Republic Steel, 362 U.S. at 491; ______________ see also United States v. Standard Oil Co., 384 U.S. 224, 225-26 ___ ____ _____________ _________________ (1966) (justifying expansive reading of section 13 of the Act). The Court expressly forbade "a narrow, cramped reading" of section 10, Republic Steel, 362 U.S. at 491, because "[a] river _______________ is more than an amenity, it is a treasure," id. (quoting New ___ ___ Jersey v. New York, 283 U.S. 336, 342 (1931) (Holmes, J.)). ______ ________ 9 In recognition of the evolution of the Act, the Corps' general policies for evaluating permit applications, which were scrupulously applied in this case, are dominated by ecological concerns. See 33 C.F.R. 320.4 (1993). These concerns do no ___ violence to the statutory language. They are rationally related to the goals of the Act. Consequently, they may, and should, drive policy. In arguing to the contrary, appellants' counsel has missed the boat. Third: In any event, the finding that the houseboats Third: _____ constitute "structures" is not necessary to the ultimate determination that the houseboats constitute "obstructions." Section 10's permitting requirements may be triggered by something other than those items enumerated in the second clause of the section, if that "something" plausibly can be deemed an obstruction to navigation. See supra pp. 3-4 & n.2. With this ___ _____ in mind, the district court made an alternative, independent finding that the houseboats, regardless of whether they were permanently moored structures, nonetheless obstructed navigation. See Seda Perez, 825 F. Supp at 452. ___ __________ We agree fully with the district court's legal analysis, and we are unable to say that its underlying finding of fact is clearly erroneous. Nevertheless, we choose to affirm on the court's primary ground of decision that the houseboats in this instance constituted structures rather than explore here the limits of what constitutes an obstruction outside the list of presumptive obstructions contained in the statute itself. 10 Although we take the Court's lead in construing the Rivers and Harbors Act in spirit with the times, we remain wary of the danger that it might be construed so broadly as to criminalize the dumping of tap water, see Standard Oil, 384 U.S. at 234 ___ ____________ (Harlan, J., dissenting). V V We need go no further.4 Appellants have failed to find a route to safe harbor. Thus, the order and judgment of the district court enforcing the agency's eviction order must be Affirmed. Costs to appellee. Affirmed. Costs to appellee. ________ _________________ ____________________ 4Because an appellate court is not obliged to consider arguments presented in a perfunctory manner, see Ryan v. Royal ___ ____ _____ Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990), we do not probe ________ appellants' plausible, but undeveloped, suggestion that the injunction issued below is overbroad to the extent that it encompasses a matter of state law not raised in the pleadings. At any rate, amending the injunction to delete the state-law reference would make no practical difference except in the unlikely event of a major policy shift by the Corps. The district court can, of course, revisit this aspect of the matter if circumstances change or if for any other reason it chooses to do so. 11