UNITED STATES of America, Plaintiff

v.

APPROXIMATELY 600 SACKS OF GREEN COFFEE BEANS SEIZED FROM CAFÉ RICO, INC., Defendant

Café Rico, Inc., Claimant.

Civil No. 02–2656 (JAG).

United States District Court, D. Puerto Rico.

Aug. 12, 2005.

Maritza Gonzalez, United States Attorney's Office, San Juan, PR, for Plaintiffs.

Juan A. Ramos–Diaz, Luis J. Acevedo–Bengoechea, Carla Ferrari–Lugo, Ramos Diaz, Acevedo & Gonzalez CSP, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On November 08, 2002, the United States of America ("the Government") instituted a civil forfeiture claim against the Defendant, Approximately 600 Sacks of Green Coffee Beans Seized from Café Rico, Inc. (Docket No. 1).[1] The Government argues that Café Rico's beans are forfeitable because the beans are not from Puerto Rico, and because importation records reveal no payment of duties for these beans, in violation of 19 U.S.C. §§ 1304, 1319, and 1595(a).[2] Additionally, the Government alleges that Café Rico's beans are forfeitable because they were pronounced not fit for human consumption by the FDA, in violation of 21 U.S.C. § 334.

After the Government implemented the forfeiture, Café Rico requested a judicial proceeding, and instituted a counterclaim against the government, requesting damages for an allegedly unconstitutional and improper forfeiture (Docket No. 14). On December 10, 2004, the Government moved for summary judgment (Docket No. 43). On December 17, 2004, the Government moved to dismiss the counterclaim (Docket No. 46). On January 5, 2005, Café Rico opposed both of the Government's motions, alleging that the Government was relying on improperly conducted tests, and that there are genuine issues of material fact as to whether the forfeited beans are from outside Puerto Rico, and whether they are fit for human consumption (Docket No. 58).

For the reasons discussed below, the Court **GRANTS** the government's motion for summary judgment, and **GRANTS** the government's motion to dismiss Café Rico's counterclaim.

## FACTUAL BACKGROUND[3]

On November 27, 2002, United States Customs Service agents ("USCS agents")

---

1. Claimant is the former owner of the 600 sacks of beans, Café Rico, Inc. ("Café Rico").

2. These sections provide for the marking of imported articles; for duties on coffee imported into Puerto Rico; and permit warrants for searches and seizures in cases of unpaid goods, respectively.

3. The relevant facts are taken from the government's Motion for Summary Judgment (Docket No. 43) and from Café Rico's Opposition to the Motion for Summary Judgment (Docket No. 58).

executed a search warrant from the United States District Court for the District of Puerto Rico and searched the facilities of Beneficiado de Café Hacienda Pintado and/or Café Luri ("Pintado/Luri") in Yauco, Puerto Rico. The USCS agents seized approximately sixty-five "quintales"[4] of coffee beans from Pintado/Luri and took a coffee bean sample from each sack on the premises. The agents sent the coffee bean samples to Savannah, Georgia, for "country of origin" analysis in the USCS laboratory, which revealed that the coffee beans are not from Puerto Rico.

On December 21, 2001, the PRDA noticed signs of "broca" insect damage (Hypothenemus hampei, Ferr) on Café Rico beans while conducting a routine inspection. Based on the suspicion of "broca" damage, the PRDA obtained a warrant for the seizure of 600 sacks of beans from Café Rico, from which samples were sent to and analyzed by the United States Food and Drug Administration ("FDA"). The FDA found that the beans had been damaged by "broca" and that this and the presence of other insects, dead and alive, rendered the coffee beans unfit for human consumption in the United States and its territories. Furthermore, because there is no "broca" in Puerto Rico, "broca" can damage the Puerto Rican coffee crop. On March 5, 2002, the 600 bean sacks were seized pursuant to a warrant issued by United States Magistrate–Judge Aida Delgado Colon.

In addition to the foregoing, the USCS investigation revealed that Pintado/Luri sold coffee beans to Café Rico for the 2001–2002 coffee crop season, but found no records from the port of entry of San Juan, Puerto Rico, indicating payment on these beans, which amounts to a violation of 19 U.S.C. § 1595a.

To this, Café Rico simply claims that it purchases its coffee from over 250 small coffee producers and that it is impossible for it to know from whom exactly a particular set of beans comes. Café Rico also claims that the USCS finding that the beans are not from Puerto Rico was based on an improper test; that signs of "broca" damage were minimal; that the insects present would be purified by roasting; and that the FDA's determination that the beans were unfit for human consumption is therefore erroneous.

## STANDARD OF REVIEW

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists

---

4. One "quintal" is 100 kilos.

that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

B. *Summary Judgment in Civil Forfeiture Cases*

In cases of civil forfeitures, summary judgment must be evaluated in the context of the relevant statutes. The burden of proof in civil forfeitures is controlled by the Civil Asset Forfeiture Reform Act of 2000, ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (2000). CAFRA changed the Government's initial burden of proof in civil forfeiture actions. Previously, the Government had to show probable cause for the forfeiture; now it must establish that the property is subject to forfeiture by a preponderance of the evidence. Once this is established, the burden shifts to the claimant to show, by a preponderance of the evidence, that it is an innocent owner, in which case its interest in the property cannot be forfeited. *See* 18 U.S.C. 983(d)(1),(2),(3). Claimants cannot assert the innocent owner defense, however, in cases of contraband or otherwise illegal property. *See* 18 U.S.C. 983(d)(4).

In evaluating the evidence presented by either party to meet its burden of proof under CAFRA and Title 18 U.S.C., courts may be called upon to review the findings and decisions of administrative agencies. Pursuant to 5 U.S.C. 706(2)(A), a court reviewing such a decision must "defer heavily to agency within agency's sphere of interest", particularly when the decision is of a scientific nature. *United States. v. Members of Estate of Boothby,* 16 F.3d 19, 21–22 (1st Cir.1994); *Town of Norfolk v. Army Corp. of Engineers,* 968 F.2d 1438, 1445–46 (1st Cir.1992). Accordingly, the standard of review presents "high hurdles to parties challenging fact-based decisions of administrative agencies … [the court may] correct errors of law, but, otherwise, the court is limited to a search for arbitrary or capricious behavior." *Boothby,* 16 F.3d at 21.

## DISCUSSION

A. *The coffee beans are forfeitable*

1. *Country of Origin Analysis*

The government submits that Café Rico's property is subject to forfeiture be-

cause the USCS found that the beans were not from Puerto Rico and that no duty was paid on the beans, which means that the beans were brought into the United States illegally and are contraband. Because the government made its case through a preponderance of the evidence, relying on agency findings that are entitled to deference by this Court, Café Rico also needs a preponderance of the evidence to rebut the government's proffer.

■ Café Rico claims that the USCS' "country of origin" analysis of the beans was improperly conducted. Café Rico's expert never explains his claim that a proper "country of origin" analysis would show that the beans are from Puerto Rico or present evidence to support this finding. The expert just concludes that had the test been conducted differently, it would show that the beans' most likely place of origin is Puerto Rico. This unsupported assertion fails to meet the high burden required by CAFRA, and does not pose a genuine issue of material fact which precludes summary judgment.

### 2. Café Rico Cannot Assert the Innocent Owner Defense

■ Café Rico claims that even if this Court finds that the beans are contraband, its interest cannot be forfeited because it is an innocent owner which acquired the property "after the conduct giving rise to the forfeiture has taken place." 18 U.S.C. § 983(d)(3)(A). This section applies to innocent owners of property used for an illegal activity, however, and not to property that in itself is illegal. Indeed, the statute's next section makes this clear by stating that the innocent owner defense is not available in cases of contraband. 18 U.S.C. § 983(d)(4). Because the beans in this case are not from Puerto Rico and have not been properly imported into the country, they are contraband. Café Rico's

alleged innocence as to previous illegal activity involving the beans does not change the fact that the beans are contraband and thus forfeitable. There is therefore no issue of fact which, even if resolved in Café Rico's favor, would enable it to assert such a defense.

### 3. The Beans Are Unfit for Human Consumption

■ The Government also claims that Café Rico's beans are forfeitable because they are unfit for human consumption, based on the FDA's findings as to this matter. As with its analysis of country of origin, the Government meets the burden imposed by CAFRA in civil forfeiture cases; again Café Rico fails to meet its own burden when attempting to rebut the Government's proffer.

■ It is well established that green coffee beans qualify as "food" since they are processed into a food product, in spite of the fact that they are not ready for consumption before they are roasted. See United States v. O.F. Bayer & Co., 188 F.2d 555, 557 (2nd Cir.1951); 21 U.S.C. 342(a)(3)("a food does not have to be ready to eat or drink before it can be adulterated and subject to condemnation"). Food is considered "adulterated" and may be seized and condemned by the United States if it consists, inter alia, "in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food." 21 U.S.C. § 334(a)(1),(3); United States v. 1,500 Cases More or Less, Tomato Paste, 236 F.2d 208, 214 (7th Cir.1956). Insects constitute "filth" within the meaning of the statute. See United States v. Cassaro, Inc., 443 F.2d 153, 156 (1st Cir. 1971). Thus, even if insects do not pose a health risk, their presence in food may constitute grounds for seizure of the food. Id.

The FDA's lab analysis and determination that the coffee beans have "broca" contamination and are unfit for human consumption provided the government with sufficient facts to establish that the property was subject to forfeiture under CAFRA's burden of proof. Café Rico counters that the FDA improperly determined that the presence of insects in the beans made them unfit for human consumption because the small amount of "broca" damage found should not result in forfeiture. This argument is not supported by any rational explanation, such as what amount of "broca" would be excessive, or resolution of the fact that "broca" does not exist in Puerto Rican coffee and poses a threat to the Puerto Rican coffee crop.

■ Café Rico also presents no evidence indicating that the FDA acted arbitrarily or capriciously in its determination. Absent such a showing, the FDA's decision as to the amount is entitled to deference by this Court. Additionally, the statutory language permits the seizure of food that has "any" amount of "filth" present, in this case insects. *1,500 Cases More or Less, Tomato Paste,* 236 F.2d at 211 (explaining that Congress chose the word "any" because the decision as to what level of filth reasonably warrants seizure needs to be made on a case-by-case basis by the FDA,

and not by the courts). Finally, Café Rico's contention that the insects found present in the beans would be eliminated by roasting is also immaterial, as it is well established that green coffee beans may be considered adulterated in spite of the fact that "a further process, 'roasting', is necessary before they are intended for human consumption. *O.F. Bayer & Co.,* 188 F.2d at 557.[5]

Café Rico's assertions regarding the insects in its beans are therefore all conclusory and unsupported, or immaterial. Thus, they do not provide sufficient evidence to rebut the FDA's determination and create a triable issue of fact. Accordingly, the Court must grant summary judgment to the government, because Café Rico does not meet the standard required by CAFRA.[6]

C. *Forfeiture of the beans does not violate the Eighth Amendment*

Café Rico claims that because its beans are not adulterated or contraband, the forfeiture violates the Eighth Amendment as it is grossly disproportional. This Court has already resolved that Café Rico has not met its burden of proof regarding the facts upon which it bases its Eighth Amendment claim. Nonetheless, we will address the legal argument here.

5. Café Rico also mentions that the PRDA's Detention Order for a routine inspection was not really motivated by suspicion of broca damage. It bases this on the fact that the reason given for the Detention order was different on December 21 than on December 20, 2002. This allegation does not impact the fact that the routine inspection was permissible and that the investigation revealed the presence of insects.

6. Café Rico also alleges that the affidavit in support of the search warrant executed in March 5, 2002, was insufficient to support a judicial determination of probable cause to

issue the search warrant. The PRDA's suspicion that the beans might be damaged by "broca" provides such cause, however. Furthermore, in highly regulated industries where there is substantial government interest in a search, and where the privacy interest is minimal, searches conducted without search warrants supported by probable cause have repeatedly been upheld. *See, e.g. Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), *New York v. Burger,* 482 U.S. 691, 699–703, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987).

The Supreme Court has determined that forfeiture of property is limited by the Eighth Amendment in civil cases as well as in criminal ones. *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In civil cases, however, courts must consider the extent to which forfeiture of the property is remedial as opposed to punitive, because remedial forfeitures of illegal property do not violate the Eighth Amendment since the goal is to remove dangerous items from society, rather than punish their owner. *Id.; see also United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 364, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984). In cases where the seized goods were illegally imported into the United States, forfeiture of those goods is considered remedial as well as punitive, and is not excessive or grossly disproportional, even if the goods are not dangerous. *Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972).

■ The *in rem* forfeiture in this case, as in most cases, serves both remedial and punitive purposes. It is punitive because the beans were brought illegally into the United States, but the forfeiture of contraband is also remedial, as is forfeiture of the beans because they are unfit for human consumption. Because the forfeiture does not serve remedial purposes only, it is subject to Eighth Amendment scrutiny. However, the forfeiture is primarily remedial in this case. Because the Government's punitive and remedial goals are both legitimate and require forfeiture of all 600 sacks of coffee, it is not excessive or grossly disproportional. As no material issue of fact exists as to the application of the Eighth Amendment in this case, the Court can grant the Government's motion for summary judgment.

**D.** *Due Process Complaint*

Café Rico claims that the Court violated its Due Process rights by allowing the beans to be forfeited upon a showing of probable cause and not preponderance of the evidence. It is well established in the First Circuit that "due process, in the forfeiture context, minimally requires that the government provide an individual with 'notice and an opportunity to be heard before confiscating his property.' " *Gonzalez–Gonzalez v. United States,* 257 F.3d 31, 35–36 (1st Cir.2001)(*quoting United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 46, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Because there is no specific test for determining whether notice was adequately provided in any given case, the question is one of reasonableness: "the government must afford notice sensibly calculated to inform the interested party of the contemplated forfeiture and to offer him a fair chance to present his claim of entitlement." *Id.* at 36.

■ After examining the record, this Court finds Café Rico's Due Process claim meritless. Probable cause properly led this Court to issue search warrants for various searches and seizures, as detailed above, but forfeiture of the beans was not granted until the Government showed by a preponderance of the evidence that the beans were contraband and adulterated, and thus subject to forfeiture. Additionally, the Government clearly complied with Due Process requirements by providing Café Rico with reasonable notice of the forfeiture proceeding and with sufficient facts so that Café Rico had a fair chance to represent its claim, as required by law. *See Gonzalez–Gonzalez,* 257 F.3d at 31. Finally, notice of the proceedings were filed in a timely fashion and Café Rico's request for a judicial rather than administrative proceeding was granted. Thus, Café Rico's Due Process claim creates no

material issue of fact precluding summary judgment.

### E. *Bill of Attainder*

■ Café Rico also claims that forfeiture was unjust because CAFRA is a Bill of Attainder. A Bill of Attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). It is not necessary to entertain the claim that CAFRA is a Bill of Attainder in this case, as Café Rico asked for and was granted a judicial proceeding. Thus, the question of a Bill of Attainder is moot and there is no issue of material fact which would support denying the motion for summary judgement on these grounds.

### F. *Café Rico's Counterclaim.*

Café Rico's counterclaim against the Government reiterated its previous factual allegations as to the USCS' and FDA's testing, the same legal theories about the unconstitutionality of the proceedings, and requested damages for the loss of the beans and of goodwill and several business deals. The Government moved to dismiss, arguing that because the beans are forfeitable, Café Rico cannot state a claim upon which relief can be granted.

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

■ Because this Court grants the Government's motion for summary judgment on the judicial proceeding regarding the Government's seizure of the beans, the Court also grants the motion to dismiss Café Rico's counterclaim pursuant to Fed. R.Civ.P. 12(b)(6). Inasmuch as the Court finds that the forfeiture of Café Rico's 600 sacks of beans was proper, Café Rico thus fails to state a claim under which relief can be granted and the Government's Motion to Dismiss is hereby granted.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion for summary judgment, and **GRANTS** plaintiff's motion to dismiss claimant's counterclaim. Judgment shall be entered accordingly.

IT IS SO ORDERED.