UNITED STATES of America, Plaintiff–Appellee,

v.

UNIVERSAL FRUITS AND VEGETABLES CORPORATION; David Pai, aka Shih Wei Pai; Jason Pai, aka Chung Sheng Pai, Defendants–Appellants.

No. 02–55340.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 2003.

Filed March 17, 2004.

Amended June 2, 2004.

Gina McCoy, Horvitz & Levy LLP, Encino, CA, argued the cause for the appellants and filed briefs. Mitchell C. Tilner also was on the briefs.

Douglas Hallward–Driemeier, an attorney on the appellate staff of the Civil Division, United States Department of Justice, Washington, DC, argued the cause for the appellee and filed a brief. Robert D. McCallum, Assistant Attorney General, Debra W. Yang, United States Attorney, and Douglas N. Letter, also were on the brief.

Before REINHARDT, O'SCANNLAIN, and FISHER, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

The government's "motion to direct transfer pursuant to 28 U.S.C. § 1631 or, in the alternative, petition for panel rehearing" is GRANTED.

Accordingly, the opinion filed March 17, 2004 is amended as follows:

*Slip. op. at 3320 n. 13:* At the very beginning of this footnote, insert the following language:

"While the question of its jurisdiction to entertain FCA cases is of course for the Court of International Trade (and, in due course, the Federal Circuit) to resolve,"

*Slip. op. at 3321:* Prior to the signal for footnote 14, insert the following language:

"Because the CIT 'may be able to hear th[is] case,'" *Sessler v. United States,* 7 F.3d 1449, 1452 (9th Cir.1993), "the prudent thing to do is to direct the district court to transfer the case to the CIT so that the CIT can determine the question of its own jurisdiction." *Pentax Corp. v. Myhra,* 72 F.3d 708, 711 (9th Cir.1995)."

*Slip. op. at 3321:* Following the word "REVERSED," insert the following language:

"and REMANDED to the district court with instructions to transfer this case to the CIT pursuant to 28 U.S.C. § 1631."

## OPINION

O'SCANNLAIN, Circuit Judge.

We must decide which court—a federal district court or the Court of International Trade—has jurisdiction over an action brought by the United States under the False Claims Act arising out of an importer's scheme to avoid paying customs duties.

### I

In July of 1994, the United States Department of Commerce ("Department") issued a preliminary determination that fresh garlic from the People's Republic of China (PRC) was being "dumped" into the United States. *See* 59 Fed.Reg. 35310–12 (July 11, 1994).[1] Pursuant to its authority under the Tariff Act of 1930, the Department also issued a preliminary antidumping order imposing a duty of 376.67 percent of the declared value of each shipment of garlic. *Id.* at 35311. To get their shipments of garlic, importers were required to post a bond or to provide a cash deposit. The preliminary order became final in November of 1994. *See* 59 Fed.Reg. 59209–03 (Nov. 16, 1994).

Incorporated in 1987, Universal Fruits & Vegetable Corporation ("Universal") was in the produce business, importing, among other things, garlic, ginger and shallots for resale in the United States. David Pai initially ran the business by himself, but eventually his father, Jason Pai, came on to assist him. Universal was informed of the antidumping duty by its customhouse broker,[2] Due International. At the time the duty became effective, Universal was expecting a shipment of garlic en route from China. Universal never posted the duty required upon arrival under the antidumping order and ultimately abandoned the shipment.

Soon thereafter, the government began investigating Universal on suspicion that, unwilling (or unable) to pay the large antidumping duty, the company was transshipping its garlic via South Korea so as to avoid having to do so. In June of 1995, Customs agents executed a search warrant at Universal's premises and seized various business records, among them several in-

---

1. Dumping takes place when a good is imported into the United States and sold at a price significantly lower that either the cost of the good's production or its price in the exporting market.

2. A customhouse broker is a licensed, private sector service provider who coordinates the activities of all parties involved in the import transaction, but acts on behalf of its importer-customers. One of the services that customhouse brokers provide to their customers is to facilitate the clearance of goods through the U.S. Customs Service ("Customs"), Food and Drug Administration, and the other agencies that regulate goods imported into the United States.

criminating documents lending strong support to the government's contention that Universal was evading the antidumping duty by transshipping.[3]

More than five years later,[4] on November 2, 2000, the government filed suit against Universal, alleging that, on four separate occasions, Universal had filed false customs documents indicating that South Korea, rather than China, was the origin of the garlic it was importing. Universal's actions, the government alleged, violated the so-called "reverse false claims" provision of the False Claims Act ("FCA"), which makes it illegal to "make[ ], use[ ], or cause[ ] to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the government." 31 U.S.C. § 3729(a)(7). As provided for under the FCA, the government sought "a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the government sustain[ed]" as a result of the false claim. 31 U.S.C. § 3729(a). The total value of the four shipments, as declared by Universal, was $170,993. Applying the 376.67 percent antidumping duty to that declared value resulted in actual damages of $644,079, which, when trebled, to-

taled $1,932,237. On top of that, the government added four civil penalties of $5,000 for each of the false customs declarations and a fifth such penalty for David Pai's alleged false statement to a customs agent. In total, the government sought $1,952,237 in damages from Jason Pai, and $1,957,237 from David Pai and Universal.

Universal moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim. With respect to the former motion, Universal contended that, because the government's claim concerned a customs matter, it fell within the exclusive jurisdiction of the Court of International Trade. *See* 28 U.S.C. § 1582(3) ("The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States ... to recover customs duties.").[5] With respect to the latter motion, Universal contended that, even if suit under the FCA in district court were jurisdictionally sound, the customs duties sought by the government were not sufficiently definite to constitute an "obligation" under the terms of the FCA. The district court denied both motions.

The government then moved for summary judgment based upon evidence

3. Among the items seized was a letter from Jason Pai to Xu Xingmin that included the following request: "As regards the packaging, please use blank paper cartons with no printing on them at all. The reason is that someone transshipped via South Korea and the transshipper was careless. Some cartons were not replaced with paper cartons bearing the legend Produced in Korea on them, but were packaged in the original Chinese cartons. These were discovered by Customs, and in addition to paying a tariff of 376.67%, [the subject] was sent to court.... So please handle this matter carefully and use blank paper cartons. Big trouble could result if even one or two cartons are overlooked! Do me the favor!"

4. Universal contends that this lapse in time is significant because of a disparity in the statutes of limitations in the False Claims Act on the one hand, and 19 U.S.C. § 1592(a), on the other. The latter statute, which prohibits (among other things) the importation of merchandise by means of fraudulent documents or statements, has a five-year statute of limitations. *See* 19 U.S.C. § 1621. The False Claims Act, on the other hand, has a six-year statute of limitations. *See* 31 U.S.C. § 3731(b).

5. Universal further noted its belief that the government was proceeding under the False Claims Act because the five-year statute of limitations under 28 U.S.C. § 1582 has passed.

seized in its 1995 search of Universal's premises and upon a series of declarations concerning that evidence. The district court granted the motion for summary judgment on December 17, 2001, and the next day entered judgment awarding damages in the full amount sought. Universal and David and Jason Pai timely appealed.

## II

28 U.S.C. § 1582 confers upon the Court of International Trade ("CIT")

> exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—
>
> (1) to recover a civil penalty under section 592, 593A, 641(b)(6), 641(d)(2)(A), 704(i)(2), or 734(i)(2) of the Tariff Act of 1930;
>
> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury; or
>
> (3) to recover customs duties.

*Id.* A complementary statutory provision, 28 U.S.C. § 1340, confers upon the district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage *except matters within the jurisdiction of the Court of International Trade.*" *Id.* (emphasis added).

■ In interpreting the predecessor statute to § 1582, we have held that

it is well-established that § 1582(a) means what it says: the jurisdiction of the Customs Court [6] is exclusive. Even when other, broadly-worded statutes seem to confer concurrent jurisdiction on the district courts, the exclusivity of Customs Court jurisdiction reflects a policy of paramount importance which overrides the literal effect of [other statutes].

*Fritz v. United States,* 535 F.2d 1192, 1195 (9th Cir.1976).[7]

■ The Supreme Court has nevertheless noted that "Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit ... challenging customs-related laws ...." *K mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 188, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) (emphasis in original). Rather, Congress "opted for a scheme that achieved the desired goals of uniformity and clarity by delineating precisely the particular customs-related matters over which the Court of International Trade would have exclusive jurisdiction." *Id.* Thus, "[d]espite the fact that the Customs Courts Act of 1980 broadened the exclusive jurisdiction of the Court of International Trade, it cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant." *Trayco, Inc. v. United States,* 994 F.2d 832, 836 (Fed.Cir.1993).

The "specific jurisdictional grant at issue," 28 U.S.C. § 1582(3), gives CIT exclusive jurisdiction over (1) any civil action (2)

---

**6.** The Customs Court was renamed the Court of International Trade in the Customs Courts Act of 1980. Pub.L. 96–417, 94 Stat. 1727.

**7.** While *Fritz* and other authority within this circuit concerning the exclusive jurisdiction of the Court of International Trade, *see Cornet Stores v. Morton,* 632 F.2d 96, 98 (9th Cir. 1980), predate the 1980 statute enacting the current version of § 1582, we have reaffirmed the validity of that authority in subsequent

years. *See Earth Island Inst. v. Christopher,* 6 F.3d 648, 652 (9th Cir.1993) ("We are bound ... by our opinion in *Cornet Stores* ... in which we ... noted that conflicts between exclusive Customs Court jurisdiction and the broad jurisdiction of the district courts should be resolved by upholding the exclusivity of the Customs Court jurisdiction.") (citations and internal quotation marks omitted).

which arises out of an import transaction (3) and which is commenced by the United States (4) to recover customs duties. That the first three elements of this provision are satisfied in the present case is undisputed. The central issue, then, is whether the government's "reverse false claims" action is one to "recover customs duties."

## A

■ In support of its contention that the government's claim here is, at bottom, a customs claim, Universal notes that the measure of the government's damages is essentially a tally of the duties it claims Universal owed multiplied by three. Because we have consistently rejected "creative arguments ... presented in hopes of avoiding the exclusivity of Customs Court jurisdiction," *Cornet Stores*, 632 F.2d at 98, Universal contends that we must do so here as well.

The government counters that its FCA claim "is not a suit to collect duties that defendants owe based upon the importation of goods. Rather it is [a] suit to recover damages and statutory penalties based upon defendants' fraud as provided in the False Claims Act...." Appellee's Br. at 17. Responding to Universal's charge that the distinction between FCA damages and customs duties is illusory, the government notes that this court has distinguished between "underlying fraudulent activity"—which does not trigger FCA liability—and "the [false] claim for payment," which does. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th

Cir.1996); *see also United States ex rel. Sutton v. Double Day Office Services, Inc.*, 121 F.3d 531, 534 (9th Cir.1997) ("Double Day's failure to pay Sutton prevailing wages was a violation of the [Service Contract Act]; however, it was not a violation of the FCA. Double Day violated the FCA when it submitted a claim for payment to the United States falsely stating that it had complied with the FCA. The FCA attaches liability to the claim for payment, not to the underlying activity.").

In support of its attempt to distinguish Universal's false customs declarations from the customs duties those false declarations were designed to avoid, the government relies on the Federal Circuit's decision in *United States v. Blum*, 858 F.2d 1566 (Fed.Cir.1988). In *Blum*, the defendant was alleged to have "improperly caused orange juice concentrate to be entered into the United States duty-free ... whereas the orange juice concentrate was not entitled to duty-free entry." *Id.* at 1567. The government brought an action against Blum, his importer, and his importer's surety under 19 U.S.C. § 1592(a) (1982) which in pertinent part stated that "no person, by fraud, gross negligence, or negligence ... may, enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of any document, written or oral statement, or act which is material and false." [8] The government sought to impose the statutory penalties set forth in § 1592(c) [9] against Blum, but also sought

---

**8.** This section has since been updated to read: "[N]o person, by fraud, gross negligence, or negligence ... may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of any document *or electronically transmitted data or information,* written or oral statement, or act which is material and

false...." 19 U.S.C. § 1592(a) (2003) (enumeration omitted and emphasis added).

**9.** Section 1592(c) sets forth three different maximum penalties for violations of § 1592(a), depending upon whether the violation was committed by (1) fraud, (2) gross negligence, or (3) negligence. "A fraudulent violation of subsection (a) of this section is

under § 1592(d)[10] to recover from Blum and the other defendants the import duties lost as a result of the violation of § 1592(a).

The CIT dismissed the government's § 1592(d) claim, reasoning that the subsection "does not provide the United States with an independent cause of action to collect lost import duties resulting from conduct that violated subsection (a)." *Blum*, 858 F.2d at 1568–69. On appeal, the Federal Circuit reversed the CIT's dismissal of the government's § 1592(d) claim, noting that "[t]he statutory scheme provides the United States with means both (1) to impose a penalty for the improper conduct *and* (2) to recover the import duties lost as a result of the improper conduct." *Blum*, 858 F.2d at 1569. The court thus concluded that an action seeking to impose the statutory penalties for violating § 1592(a) is distinct from one seeking the lost duties recoverable under § 1592(d). *Id.*

### B

According to the government, the Federal Circuit's distinction between customs and penalties—and its conclusion that the United States could seek recovery of each in the same action—reflects a "statutory framework regarding customs duties [that] allows the government to choose among a variety of remedies to combat fraud." Appellee's Br. at 19. The government's reliance on *Blum* stumbles, however, over two obstacles: the first legal, the other factual. First, whatever *Blum* says about the remedial options available to the government in actions relating to the customs violations at issue in that case, it does not say *anything at all* about where jurisdiction over such actions would be proper. Indeed, *Blum* itself involved an action initiated in the CIT, reflecting the fact that, while § 1592 sets forth an *administrative mechanism* for attempts to introduce merchandise into the United States by fraud or negligence, it also contains a provision that allows the government to bring a § 1592 action in the CIT. *See* 19 U.S.C. § 1592(e).[11]

■■ The second problem with the government's reliance on *Blum* is the reality of what it seeks in the instant case. Even accepting the government's characterization of its FCA claim against Universal as one for "damages," the fact remains that, should it prevail in its action, at least part of the government's damages will be "customs duties," namely the antidumping tariffs it claims Universal fraudulently evaded.[12] Allowing the government to al-

punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise." 19 U.S.C. § 1592(c)(1).

10. Section 1592(d) reads, in pertinent part, "if the United States has been deprived of lawful duties as a result of a violation of subsection (a) of this section, the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed."

11. The government is correct to note that, among the "variety of remedies" Congress has provided to combat customs fraud are civil forfeiture remedies and criminal penalties enforceable in district court. *See* 18 U.S.C. §§ 542 and 545. Reference to these provisions, however, aids the government little. Indeed, to the extent that Congress' explicit grant of district court jurisdiction over these remedial and penal provisions demonstrates congressional willingness to make exceptions to the CIT's exclusive jurisdiction, citation to these provisions actually undermines the government's case. The reverse false claims provision of the FCA cannot be said to accomplish the same task as these provisions because it lacks the customs-specific language found in 18 U.S.C. §§ 542 and 545.

12. Indeed, the government admitted as much at oral argument: When asked by the court

ter this reality by incorporating "customs duties" into "damages" runs counter to the principle that a party "may not, by creatively framing [its] complaint, circumvent a congressional grant of jurisdiction ... A [c]ongressional grant of exclusive jurisdiction cannot be so easily circumvented." *Heller, Ehrman, White & MacAuliffe v. Babbitt,* 992 F.2d 360, 363–64 (D.C.Cir. 1993) (internal quotation marks omitted, second alteration in original). Furthermore, if the government could bring an FCA claim in district court whenever a party fraudulently withholds customs duties, then the exclusive jurisdiction over actions to recover customs duties in all such instances would become a virtual nullity: The government could simply recast the withheld duties as damages and proceed in district court under the FCA.[13]

III

Because our precedent requires courts faced with "conflicts between the broad grants of jurisdiction to the district courts and the grant of exclusive jurisdiction to the [Court of International Trade]" to resolve those conflicts "by upholding the exclusivity of the [Court of International Trade's] jurisdiction," *Cornet Stores,* 632 F.2d at 98, we must conclude that the district court in this case lacked subject matter jurisdiction. Because the CIT "may be able to hear th[is] case," *Sessler v. United States,* 7 F.3d 1449, 1452 (9th Cir. 1993), "the prudent thing to do is to direct the district court to transfer the case to the CIT so that the CIT can determine the

---

whether the government would ever, having already brought a successful FCA claim, pursue an action for the customs duties themselves under § 1592, the government responded that it would not because its claim for the duties would merely be "offset" by its recovery on the FCA claim. We fail to see how to interpret this response as anything other than an admission that the FCA claim is, at least in part, an action to recover customs duties.

13. While the question of its jurisdiction to entertain FCA cases is of course for the Court of International Trade (and, in due course, the Federal Circuit) to resolve, we do not believe that our decision today operates effectively to preclude the government from employing the reverse false claims provision of the FCA in seeking to recover fraudulently evaded customs duties. Although the Federal Circuit has suggested that the district courts have exclusive jurisdiction over FCA suits initiated by *qui tam* relators, *LeBlanc v. United States,* 50 F.3d 1025, 1031 (Fed.Cir.1995), we see little reason to believe that the CIT would extend that limited holding to bar its own jurisdiction to entertain reverse false claims actions brought by the government to recover customs duties. As the Second Circuit quite persuasively has explained, 31 U.S.C. § 3732(a) merely delineates proper *venue* for

FCA actions, not *jurisdiction* over such claims. *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer,* 110 F.3d 861, 865 (2d Cir.1997); *see also Shekoyan v. Sibley Int'l Corp.,* 217 F.Supp.2d 59, 73 n. 15 (D.D.C.2002); *United States ex rel. McCarthy v. Straub Clinic & Hosp.,* 140 F.Supp.2d 1062, 1071 (D.Haw.2001). To the Second Circuit's analysis, we add the observation that, far from supplanting the CIT's ability to hear FCA actions, § 3732 complements it. For, while the CIT's venue already is effectively universal, *see* 28 U.S.C. § 256, the number of district court venues in which FCA suits could be brought would be quite limited in the absence of § 3732. *Cf.* 28 U.S.C. § 1391(b). In a sense, then, § 3732 simply brings venue in the district courts into line with the generous venue options already made available to the CIT—but does not somehow operate to bar the CIT from exercising its jurisdiction over appropriate FCA actions. To its credit, the CIT has tentatively signaled agreement with this view. *See United States ex rel. Felton v. Allflex USA, Inc.,* 989 F.Supp. 259, 21 C.I.T. 1344, 1347 (1997) (identifying *Le-Blanc's* language as—at best—an "alternative holding," suggesting that it may be *dicta,* noting that the case arose in the *qui tam* context, and highlighting the "appeal" of the Second Circuit's understanding of the relevant statutory provision).

question of its own jurisdiction." *Pentax Corp. v. Myhra,* 72 F.3d 708, 711 (9th Cir.1995).[14]

REVERSED and REMANDED to the district court with instructions to transfer this case to the CIT pursuant to 28 U.S.C. § 1631.

**14.** Notwithstanding the government's invitation, we decline to address the question whether a *qui tam* relator could bring a reverse FCA action involving customs duties in the district courts.