**UNITED STATES of America, Plaintiff,**

v.

**323 "QUINTALES" OF GREEN COFFEE BEANS, et al., Defendants.**

**Civil No. 10–1519 (MEL).**

United States District Court, D. Puerto Rico.

Signed Dec. 30, 2013.

Eugenio A. Lomba–Ortiz, Miguel A. Fernandez–Torres, Myriam Y. Fernandez–Gonzalez, United States Attorneys Office, San Juan, PR, for Plaintiff.

Lorenzo J. Palomares–Starbuck, Lorenzo Palomares PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

MARCOS E. LÓPEZ, United States Magistrate Judge.

### I. PROCEDURAL HISTORY

On June 9, 2010 the United States of America (the "government" or "plaintiff") filed a complaint along with a statement made under penalty of perjury in support of the same (the "affidavit") by José I. Cruz Pillich, a special agent for ICE ("Agent Pillich"), to institute a civil *in rem* action under 18 U.S.C. § 545 and 19 U.S.C. § 1595a(c)(1)(A) and (2)(C) for the forfeiture of 323 "quintales" (approximately 32,300 pounds) of green coffee beans (the "property"). ECF Nos. 1, ¶¶ 1–2; 265, ¶ 2; 279, ¶ 2. The property had been seized by a United States Immigration and Customs Enforcement ("ICE") agent, pursuant to a search and seizure warrant. ECF No. 265–1. On July 13, 2010, Daniel Omar Torres ("claimant") filed an answer to the complaint, along with a third party complaint against third party defendant Nelson Colón ("Mr. Colón"), in his personal capacity and official capacity as inspector for the Puerto Rico Department of Agriculture, and against third party defendant Javier Aquino ("Mr. Aquino"), in his individual capacity and official capacity as Secretary of Agriculture for the Commonwealth of Puerto Rico at the time the property was seized. ECF No. 9. On May 19, 2011, the court granted third party defendant Mr. Aquino's motion to dismiss plaintiff's third party complaint against him in both capacities, without prejudice. ECF No. 36. On March 30, 2012, the court adopted the Magistrate Judge's Report and Recommendation (ECF No. 157) and granted third party defendant Mr. Colón's motion to dismiss plaintiff's third party complaint against him in both capacities, with prejudice. ECF Nos. 157; 172 (report and recommendation adopted).

On September 13, 2013, six days prior to the commencement of a jury trial in the case of caption, plaintiff filed a motion for summary judgment (ECF No. 238), which the court denied without prejudice on September 20, 2013. ECF No. 263. After a rescheduling of the trial, plaintiff was granted until September 25, 2013 to re-file the motion. *Id.* Pending before the court are plaintiff's motion for summary judgment (ECF No. 264), and a response in opposition filed by claimant and interested party International Coffee Vendors, Inc. (ECF No. 275). For the reasons set forth

below, plaintiff's motion for summary judgment is granted.

## II. UNCONTESTED FACTS [1]

Claimant incorporated International Coffee Vendors, Inc. D/B/A/ Gustos Coffee Co. ("ICV") as a for-profit corporation under Puerto Rico law on September 17, 2001. ECF Nos. 265, ¶ 10; 279, ¶ 10. Neither claimant nor ICV are involved in growing coffee and neither do they have the processing equipment to process coffee, so that all coffee which was to be roasted once they began the roasting operations had to be purchased from a "beneficiado" who had the necessary equipment to be able to process the coffee. ECF Nos. 265, ¶ 17; 279, ¶ 17. Claimant acknowledges that when coffee is purchased from a coffee processor or "beneficiado" that sells coffee that has been grown by another grower who is different from the "beneficiado," it is impossible for him to determine from where the coffee originated. ECF Nos. 265, ¶ 18; 279, ¶ 18.

Claimant has a license from the Department of Agriculture to purchase coffee. ECF Nos. 265, ¶ 19; 279, ¶ 19. As a condition of being licensed claimant is required to allow inspectors from the Department of Agriculture to come onto the ICV premises for certain purposes, and the inspectors have the right to do an inventory of the coffee and sample it under certain circumstances. *Id.* At all pertinent times for the purposes of the pending motion, Mr. Colón was an inspector for the Department of Agriculture of the Commonwealth of Puerto Rico, and taking samples of coffee beans was among his functions as an inspector. ECF Nos. 265, ¶¶ 21–22; 279, ¶¶ 21–22. He was part of the chain of custody of the samples of green coffee beans that he took at the premises of ICV. ECF Nos. 265, ¶ 25; 279, ¶ 25.

On January 26, 2010, Mr. Colón visited the ICV premises. ECF Nos. 265 ¶ 26; 279 ¶ 26.[2] Mr. Colón provided a sample of coffee beans taken from the ICV premises to Senior Special Agent for ICE, Antonio Illas ("Agent Illas"). ECF Nos. 265 ¶ 45; 279 ¶ 45. On or about February 3, 2010, Agent Illas provided the U.S. Customs and Border Protection ("CBP") Laboratory samples of the property for "country of origin" analysis, which indicated a greater than 99% probability match with the green coffee beans in the CBP Savannah Laboratory database from the Dominican Repub-

---

1. Local Rule 56 "structures the presentation of proof at summary judgment." *Goya Foods, Inc. v. Orion Distributors, Inc.*, 916 F.Supp.2d 177, 179 (D.P.R.2012). It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González–Toro*, 520 F.3d 58, 63 (1st Cir.2008), by requiring "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 6–7 (1st Cir.2007). In accordance with Local Rule 56(e), proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted. *See, e.g.*, ECF Nos. 279, ¶¶ 45, 46.

2. The parties contest the circumstances surrounding this visit; however, they do not dispute that Mr. Colón visited the ICV premises on said date. The government contends that he visited the premises because claimant had not submitted all the documents necessary to conduct a coffee business in Puerto Rico. ECF No. 265, ¶ 26. Claimant responds that Mr. Colón did not issue a notice of non-compliance to him. ECF No. 279, ¶ 26. The circumstances surrounding this visit are not pertinent to the disposition of the pending motion for summary judgment.

lic. *Id.* Mr. Colón had to return to the ICV premises because the coffee beans samples that he initially took from the premises tested positive for not being coffee from Puerto Rico, and he placed a hold on the property there. ECF Nos. 265, ¶¶ 30, 38, 29; 279, ¶¶ 30, 38, 39. Pursuant to the search and seizure warrant issued on February 11, 2010, the property ICE agents seized the property on or around February 16, 2010. ECF Nos. 265, ¶¶ 3–4; 279, ¶¶ 3–4. The ICE agents seized the property from a warehouse of ICV, where the property had been stored. ECF Nos. 265, ¶ 5; 279, ¶ 5. Once the property had been seized, CBP conducted subsequent sampling and laboratory tests under the laboratory report number SV20100184. ECF Nos. 265, ¶ 46; 279, ¶ 46. A total of thirty-three additional coffee samples were taken at random, thirty-two of which yielded a positive result for coffee beans with originating from the Dominican Republic, and the CBP chemist deemed the result for one sample as inconclusive. *Id.* The samples taken for CBP testing and the 323 Quintales of coffee beans seized by federal law enforcement agents were composed of exclusively unroasted coffee beans.[3]

### III. LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually re-quired." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). " 'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.' " *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir.2011) (quoting *Rodríguez–Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir.2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the non-movant to establish the existence of at least one fact issue which is both 'genuine' and 'material.' " *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990) (quoting *Garside v. Osco Drug., Inc.*, 895 F.2d 46, 48 (1st Cir.1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely

---

**3.** In their memoranda of law regarding the government's motion for summary judgment, plaintiff and claimant both directly or indirectly allude to the premise that coffee beans sampled, seized, and tested were unroasted coffee beans. *See* ECF Nos. 264; 278. However, neither the statement of uncontested material facts nor the opposing statement of material of facts directly asserts as such. *See* ECF No. 265. For the sake of clarity, the court permitted the parties to submit citations to the record by December 23, 2013, if either had evidence to support the proposition that the coffee beans sampled, seized, and/or test-ed were roasted. *See* ECF No. 280. The court noted that failure to provide evidence to specifically controvert the proposition that the coffee beans in question were unroasted would be deemed as a stipulation that the samples taken for U.S. Customs and Border Protection laboratory testing and the 323 Quintales of coffee beans seized by federal law enforcement agents were comprised of exclusively unroasted coffee beans. *Id.* As of the filing of this Opinion and Order, neither party has provided evidence to controvert the proposition that the coffee beans in question were unroasted.

"rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). The plaintiff need not, however, "rely on *uncontradicted* evidence.... So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan*, 904 F.2d at 115 (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

## IV. LEGAL ANALYSIS

### A. 18 U.S.C. § 545

 In the case of caption, plaintiff is pursuing civil forfeiture under two statutes: 18 U.S.C. § 545 ("§ 545") and 19 U.S.C. § 1595a ("§ 1595a").[4] Before the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (2000), in a civil forfeiture action, the government needed only to establish probable cause that the property was subject to forfeiture; upon the government's showing, the burden would shift to the claimant. *See* 19 U.S.C. § 1615. CAFRA, however, " 'heighten[ed] the government's evidentiary burden in civil forfeitures.' " *United States v. $21,510.00 in U.S. Currency*, 144 Fed.Appx. 888, 889 (1st Cir.2005) (quoting *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir.2005)). Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "The burden of showing something by a preponderance of the evidence, the most common standard in the civil law, simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [it] may find in favor of the party who has the burden to persuade the [jury] of the fact's existence." *United States v. Four Hundred Sixty Three Thousand Four Hundred Ninety Seven Dollars & Seventy Two Cents ($463,497.72) in U.S. Currency*

---

**4.** Although "Section 545 is a criminal provision," a forfeiture action may be brought in "a civil in rem proceeding." *United States v. An Antique Platter of Gold*, 184 F.3d 131, 139 n. 6, 140 (2d Cir.1999); *see United States v. Davis*, 648 F.3d 84, 96 (2d Cir.2011); *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 835 n. 11 (9th Cir.2004) (noting that Congress has created "civil forfeiture remedies and criminal penalties," citing 18 U.S.C. §§ 542 and 545); *United States v. Ahmad*, 213 F.3d 805, 811 (4th Cir.2000) (holding that "§ 545 entitles the government to civil forfeiture" of certain funds, subject to the Eighth Amendment); *United States v. One Tintoretto Painting Entitled The Holy Family With Saint Catherine & Honored Donor*, 691 F.2d 603, 604 (2d Cir.1982) (civil action in rem under 18 U.S.C. § 545).

*From Best Bank Account,* 779 F.Supp.2d 696, 706–07 (E.D.Mich.2011), appeal dismissed (July 19, 2012) (citing *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *In re Winship,* 397 U.S. 358, 371–72, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970))) (internal citations omitted). However, "[t]hat the burden is on the government does not change the fact that, if the government meets its burden, it will prevail unless the claimants introduce evidence to support their case" that the property in question is not subject to forfeiture. *United States v. $174,206.00 in U.S. Currency,* 320 F.3d 658, 662 (6th Cir.2003) (finding "evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any source of legitimate income ... satisfies the burden [for forfeiture] imposed by the statute.").

▮ The provisions of CAFRA apply to actions pursued under § 545. *See United*

States v. One Tyrannosaurus Bataar Skeleton,* No. 12 Civ. 4760 PKC, 2012 WL 5834899, at *1, *3 (S.D.N.Y. Nov. 14, 2012) (holding, in a civil forfeiture case under, *inter alia,* 18 U.S.C. § 545, that "CAFRA applies to the two forfeiture statutes invoked by the government that are found in Title 18"). Thus, with respect to § 545, it is plaintiff, not claimant, who ultimately bears the burden of proving that the property is forfeitable.[5] Section 545 states:

> Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper—

> Shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 545.

---

**5.** Plaintiff urges the court to " 'defer heavily to agency within agency's sphere of interest.' " *United States v. Approximately 600 Sacks of Green Coffee Beans Seized from Café Rico, Inc.,* 381 F.Supp.2d 57, 61 (D.P.R.2005) (quoting *United States v. Members of Estate of Boothby,* 16 F.3d 19, 21 (1st Cir.1994); citing 5 U.S.C. § 706(2)(A)). Nevertheless, plaintiff has not submitted any reason why the instant case should be subject to the provisions of the chapter on judicial review within the Administrative Procedure Act ("APA"). Claimant has not alleged any cause of action under the APA. Nor does claimant contend in his answer to the complaint that an administrative agency's findings or decisions were arbitrary or capricious. *See* ECF No. 9; *cf. United States v. Seda Perez,* 825 F.Supp. 447, 450 (D.P.R.1993) (reviewing an agency's action under the APA's arbitrary-or-capricious standard where "[d]efendant's only defense is that the denial of [a] permit was an arbitrary and capricious agency action"), *aff'd sub nom. United States v. Members of Estate of Boothby,* 16 F.3d 19 (1st Cir.1994). Moreover, even if claimant had alleged a cause of action under

the APA, such cause of action would necessarily fail. A party may "bring[ ][a] case under the APA, pursuant to which judicial review is available for 'final agency action for which there is no other adequate remedy in a court.' " *Town of Sanford v. United States,* 140 F.3d 20, 23 (1st Cir.1998) (quoting 5 U.S.C. § 704). As CAFRA itself indicates, "[a] motion filed under [subsection (e) ] shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e); *see United States v. Pickett,* No. 07–CR–117, 2012 WL 694712 (E.D.N.Y. Mar. 1, 2012); *Browne v. Gossett,* 259 Fed.Appx. 928, 929 (9th Cir. 2007); *cf. United States v. 662 Boxes of Ephedrine,* 590 F.Supp.2d 703, 708–09 (D.N.J.2008) (dismissing counterclaim for declaratory judgment under the APA because "the underlying forfeiture action provides an adequate method of achieving the relief sought by th[e] counterclaim[ ]"). As such, plaintiff has not shown why the arbitrary-or-capricious standard under the APA should be applicable to the case of caption.

Merchandise introduced in violation of § 545 "shall be forfeited to the United States." *Id.* Civil forfeiture under § 545 is not dependent on criminal conviction under the provision. *See United States v. Approximately 2,475,840 Lbs. of Clean, Unroasted Coffee Beans,* 608 F.Supp. 288, 291–92 (D.P.R.1985) (citations omitted) ("[W]here a statute contains a forfeiture clause which is *in rem* in nature and not *in personam,* and the clause does not expressly or impliedly provide for a prior conviction of the individual offender, such a conviction is not a prerequisite of the forfeiture. A conviction in these cases is not necessary because the property, and not the person, is considered to be the offender.").

■ For its action under § 545—pursuant to which it bears the ultimate burden—the government has not shown the absence of a genuine issue of material fact. All reasonable inferences must be indulged in the non-movant's favor. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). In Section V(B) of the pending motion for summary judgment, plaintiff notes that merchandise that is imported into the United States contrary to law is subject to forfeiture under § 545. ECF No. 264, at 11–12.[6] The importation of unroasted coffee into Puerto Rico is prohibited. *See* 7 C.F.R. § 319.73–2(a)(1). Plaintiff argues that because unroasted coffee beans cannot be brought into Puerto Rico and there is no evidence to demonstrate they were legally brought into the United States, the property must have been either been smuggled or clandestinely introduced in

violation of § 545. ECF No. 264, at 12. This contention rests on the proposition that the property is not from Puerto Rico. Plaintiff's only comment on this matter in its memorandum in support of its motion for summary judgment is that "CBP laboratory testing confirmed that [the coffee beans] are of Dominican Republic origin." *Id.* at 12. The government makes this argument in Section V(F)(1) as well. *Id.* at 20–22.

Plaintiff's argument that claimant's expert Dr. Kim Anderson ("Dr. Anderson") "did not reach the conclusion that the 323 Quintales of green coffee beans seized are coffee originated in Puerto Rico and not the Dominican Republic as claimed" misses the mark. *Id.* at 22. Claimant does not bear the ultimate burden on this issue under § 545. Although claimant's expert report does not offer an independent assessment regarding the coffee beans' country of origin he can defeat summary judgment under this section without presenting a rebuttal expert opinion to affirmatively suggest the property originated in Puerto Rico by raising a question about the credibility plaintiff's evidence.[7] *See e.g., Ross Univ. Sch. of Med., Ltd. v. Brooklyn–Queens Health Care, Inc.,* 09–CV–1410 KAM, 2012 WL 6091570 (E.D.N.Y. Dec. 7, 2012) *report and recommendation adopted in part,* 09–CV–1410 KAM RLM, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013) ("[E]ven absent a rebuttal expert a party may defeat summary judgment by citing evidence in the record that arguably suggests flaws in an expert's methodology, thereby impeaching the expert's conclusions."). In

---

6. Section V(A) addresses plaintiff's action under 19 U.S.C. § 1595a.

7. Plaintiff's argument that Dr. Anderson "in the past has agreed with the USDA methodology" is inappropriate at the summary judgment stage. ECF No. 238, at 22–24. While this argument regarding Dr. Anderson's past

publications would be acceptable for the purposes of cross-examination, there is "no room for credibility determinations" or "the measured weighing of conflicting evidence" when assessing a motion for summary judgment. *Greenburg v. P.R. Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987).

the case of caption, based on the flaws that Dr. Anderson's report suggests regarding the methodology used in the CBP laboratory and the certainty of the conclusions in the CBP report, it cannot be said that the government's proof that the property is subject to forfeiture is "unrebutted by any evidence" such that the government must prevail on its § 545 claim. *$174,206.00 in U.S. Currency*, 320 F.3d at 662.

Claimant submits an expert report by Dr. Anderson that includes analysis and findings which could lead a reasonable jury to conclude that plaintiff has not met its burden of proving by a preponderance of the evidence that the coffee beans did not originate in Puerto Rico. Whether the property originated from Puerto Rico is a central factual issue in this case of, and plaintiff must demonstrate by a preponderance of the evidence that the coffee beans are from Puerto Rico in order to succeed on its § 545 claim. According to CBP chemist Robert Redmond ("Redmond"), the model used by the CBP laboratory to test the samples uses a "robust database in coffee." ECF Nos. 265, ¶ 36; 265–12, at 47. Dr. Anderson's report critiques the methodology used in the CBP tests, contending, *inter alia*, that more robust methods for classification of the coffee beans are available and that the data set used to produce the CBP laboratory test report was too small to create "rigorous classification capability." ECF Nos. 279, ¶ 46; 279–2, at 5. The ultimate conclusion of Dr. Anderson's report is that "[g]iven the incomplete database, likely erroneous data used in the database, lack of seasonal data [and] overall small number of samples used to create the database" it is not possible to conclusively assign geographic authenticity with the model and database used to attain defendant's conclusion that there is a 99% probability that the coffee beans originated from the Dominican Republic. *Id.*

Dr. Anderson's report offers adequate explanation of her findings and conclusions, such that it cannot be discounted as overly speculative or conclusory. Her conclusion undermines the credibility of the findings from the CBP report regarding the origin of the property, raising a dispute about the likelihood that the coffee beans originated from the Dominican Republic. Therefore, in order to find for the government under § 545, the court would need to "superimpose [its] own ideas of probability and likelihood," which is not permissible at the summary judgment stage. *Greenburg*, 835 F.2d at 936. Drawing all reasonable inferences from Dr. Anderson's report in favor of claimant as the non-moving party, the court finds that summary judgment is not appropriate on this issue because a rational factfinder could find that the government has not met its burden of showing the property is subject to forfeiture under § 545 because, *inter alia*, the property originated from the Dominican Republic.

### B. 19 U.S.C. § 1595a

The government also argues it is entitled to forfeit the property under 19 U.S.C. §§ 1595a. ECF No. 264, at 8. Section 1595a(c)(1)(A) authorizes the forfeiture of merchandise "introduced into the United States contrary to law," if that property "is stolen, smuggled, or clandestinely imported or introduced." 19 U.S.C. § 1595a(c)(1)(A). The government argues that it is reasonable to contend that the property was clandestinely introduced or imported into the United States because under 7 C.F.R. § 319.73–2 unroasted coffee beans cannot be imported into Puerto Rico. ECF 264, at 8. The government adds that there is no evidence to show the property was declared upon entry into the United States. *Id.* The government asserts that the only way the beans could

have come into the United States would be if they were smuggled or clandestinely introduced, relying on the indication from CBP laboratory tests that there is a 99% probability that the property originated from the Dominican Republic. *Id.*

In the alternative, the government argues in its memorandum in support of its motion for summary judgment that the property may also be subject to forfeiture under § 1595a(c)(2)(A) [8], which states that "merchandise may be seized and forfeited if ... its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or state." 19 U.S.C. § 1595a(c)(2)(A). In support of this argument, the government again points to 7 C.F.R. § 319.73–2, contending that the stated purpose of its ban on the importation of unroasted coffee into Puerto Rico is to prevent the spread of injurious pests and fungus. ECF 264, at 8. Since the CBP laboratory tests indicate that the property originated from the Dominican Republic in violation of 7 C.F.R. § 319.73–2—a regulation related to health and safety—the government argues the property is forfeitable under § 1595a(c)(2)(A).

 Claims of civil forfeiture under § 1595a are not subject to the provisions of CAFRA. CAFRA specifically excludes from the definition of "civil forfeiture statute" the "Tariff Act of 1930 or any other provision of law codified in title 19." 18 U.S.C. § 983(i)(2)(A). This exclusion "has become known as the 'customs carve-out.'" *United States v. Davis,* 648 F.3d 84, 94 (2d Cir.2011). The provisions pertaining to the burden of proof and the innocent own-

er defense, for instance, apply expressly to actions pursuant to "any civil forfeiture statute." 18 U.S.C. § 983(c), (d)(1). Because § 1595a is a provision of law codified in title 19, "CAFRA is in no way applicable to the 19 U.S.C. § 1595a forfeiture claim...." *United States v. Broadening–Info Enterprises, Inc.,* 462 Fed.Appx. 93, 95 (2d Cir.2012). As such, the burden-shifting scheme set forth in 19 U.S.C. § 1615 is applicable to plaintiff's action under § 1595a. *See Davis,* 648 F.3d at 96 (finding that "the district court correctly applied the pre-CAFRA burden-shifting approach of 19 U.S.C. § 1615" to a case under § 1595a); *United States v. Aircraft (One (1) Douglas AD–4N Skyraider Aircraft, FAA Registration N–121CH, Serial No. 126956, together with its Log Books),* 839 F.Supp.2d 1243, 1246–47, 1250 n. 10 (N.D.Ala.2011); *United States v. Three Burmese Statues,* No. 3:07–CV–250–RJC, 2008 WL 2568151, at *2 (W.D.N.C. June 24, 2008) (19 U.S.C. § 1595a(c)); *United States v. One Lucite Ball Containing Lunar Material,* 252 F.Supp.2d 1367, 1377–78 (S.D.Fla.2003).

 Under § 1615, the government "carries a relatively light burden" of demonstrating "probable cause to believe 'that the property had the required nexus to a specified illegal purpose.'" *United States v. One Parcel of Real Prop. With Bldgs., Appurtenances, & Improvements, Known as Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.,* 960 F.2d 200, 204–05, 208 (1st Cir.1992) (citations omitted). For plaintiff's action under § 1595a, the determination of whether the government has met its initial burden to show probable cause that the seized coffee beans are subject to forfeiture is to be made by the

---

**8.** The complaint, however, states: "This is a civil action *in rem* brought to enforce the provisions of ... Title 19, *United States Code,* Section 1595a(c)(1)(A) and (2)(C)." ECF No. 1, at 1. Ultimately, the outcome of this Opinion and Order does not rest on the merits of this alternative argument.

court, not the jury. *See* 19 U.S.C. § 1615 ("[P]robable cause shall be first shown for the institution of such suit or action, to be judged of by the court."). Under the customs laws, " 'the judge, and not the jury, was to determine whether there was probable cause, so as to throw on the claimant the *onus probandi* to establish the fairness of the importation.' " *Id.* (quoting *Buckley v. United States*, 45 U.S. 251, 260, 4 How. 251, 11 L.Ed. 961 (1846)). "That rule was carried forward by 19 U.S.C. § 1615 . . . ." *Id.* As such, the probable cause determination under § 1595a is made by the court before the case is presented to the jury. To meet this burden, the government must demonstrate a reasonable ground for its belief the property is subject to forfeiture, "supported by less than prima facie proof, but more than mere suspicion." *United States v. $250,000 in United States Currency*, 808 F.2d 895, 897 (1st Cir.1987). The government may use hearsay or otherwise inadmissible evidence is making its showing of probable cause. *See United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 42 (1st Cir.1991) (citations omitted).

█ Upon the government's showing of probable cause, "the claimant has the burden of persuasion to show by a preponderance of the evidence that the property is not in fact subject to forfeiture." *Douglas AD–4N Skyraider Aircraft*, 839 F.Supp.2d at 1246–47; *see also Three Burmese Statues*, 2008 WL 2568151, at *2 (noting that the burden shifts to claimant "to show by a preponderance of the evidence that forfeiture is inappropriate"); *United States v. One Urban Lot Located at Rd. 143 K 36.1 Bauta Abajo Ward Orocovis, Puerto Rico*, 14 F.3d 45, 1994 WL 9790, at *2 n. 4 (1st Cir.1994) (noting that, once the government establishes

probable cause, the claimant "must establish a defense to forfeiture by a preponderance of the evidence").[9] In forfeiture actions under § 1615, after the government has made its probable cause showing, the party opposing forfeiture must "produce evidence which not only puts the material facts in dispute, but which enables a trier of fact to find that [it] has disproved the government's contentions by a preponderance of the evidence." *United States v. Parcels of Real Prop. With Bldg., Appurtenances & Improvements Known As 1933 Commonwealth Ave., Newton, Mass.*, 913 F.2d 1, 3 (1st Cir.1990) (citations omitted) (affirming United States District Court for the District of Massachusetts's grant of summary judgment to the government in *in rem* forfeiture action).

█ For the purposes of instituting the instant action under § 1595a, the court finds that the government has presented evidence that establishes it had probable cause that the property was subject to forfeiture, which was sufficient to institute the instant action. In reaching its determination regarding whether the government had probable cause under § 1615 to institute a civil *in rem* action for forfeiture, the court may rely on the contents of an affidavit submitted by the government. *See Parcels of Real Prop. With Bldg., Appurtenances & Improvements Known As 1933 Commonwealth Ave., Newton, Mass.*, 913 F.2d at 4 ("It is clear that the district court found probable cause and that it relied on the DEA agent's affidavit. This is sufficient."); *see also United States v. One 1974 Porsche 911–S Vehicle Identification No. 9114102550*, 682 F.2d 283, 285 (1st Cir.1982) ("The question here, then, is whether agent Ferncer's affidavit constituted sufficient probable cause."). The

---

9. Moreover, "[u]nlike other forfeiture statutes, § 1595a(c) does not contain a so-called 'innocent owner' defense." *One Lucite Ball*

*Containing Lunar Material*, 252 F.Supp.2d at 1378.

coffee beans were seized pursuant to a search and seizure warrant [10] supported by Agent Pillich's affidavit, *see* ECF No. 264–1, after the initial CBP laboratory tests were conducted on samples of the property. The government cites to Agent Pillich's affidavit, which states that the country of origin analysis performed at the CBP laboratory "indicated a greater than 99% probability match with the green coffee beans in the CBP Savannah Laboratory database from the Dominican Republic." ECF No. 264–1, at 3. The affidavit further indicates that a database check did not reveal a customs entry or legal importation of approximately 323 "quintales" of coffee beans into Puerto Rico by claimant or ICV. *Id.* Lastly, the affidavit indicates that under 7 C.F.R. § 319.73–2 unroasted green coffee beans cannot be imported into Puerto Rico. A reasonable inference from these assertions is that the property was not from Puerto Rico and was brought into the United States illegally under § 1595a.

In his memorandum in opposition to summary judgment, claimant contests that the government had probable cause, stating: "Here, the seized [sic] affidavit was based on wrong date and the government purposely left certain data and samples [out] to concoct their ill based [sic] affirmation." ECF 278, at 6. This conclusory argument is without support from evidence in the summary judgment record. The only evidence to which claimant offer in support of this contention is a general citation to Dr. Anderson's report, without referencing a specific page, or paragraph. *Id.* This is inadequate to support claimant's point, even if the underlying evidence in the record did bolster his contention. *See Davila v. Potter*, 550 F.Supp.2d 234, 238–39 (D.P.R.2007) (citing *Stepanischen*

*v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930–31 (1st Cir.1983)); *Dominguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 727 (D.P.R.1997) (aff'd per curiam, 141 F.3d 1149 (1st Cir.1998)) ("It is insufficient to merely refer to an exhibit in general. Rather, parties must make specific reference to pages and/or paragraphs. Under the anti-ferret doctrine, the Court will not search through the entire record in an attempt to discern to what parties are referring in their briefs.").

A review of Dr. Anderson's report reveals, nonetheless, that it is completely silent regarding the dates and timeline relevant to the facts of this case, and in fact makes no mention of Agent Pillich's affidavit whatsoever. *See* ECF No. 279–2. Furthermore, Dr. Anderson's report does not indicate that the government *purposefully* omitted certain data or samples from the CBP laboratory testing, laboratory report, or Agent Pillich's affidavit. She comments that the CBP laboratory report incorrectly classified a sample tested as "inconclusive," when it should have been classified as Puerto Rican coffee. *Id.* at 4. Dr. Anderson's argument regarding the labeling of a sample as "inconclusive" applies to one of the thirty-three samples tested after the property was seized—not to one of the samples of the property originally referred for country of origin analysis that Agent Pillich's affidavit referred to, prior to the seizure of the property. *See* ECF Nos. 1–1, at 3; 265–12, at 1, 43; 279–2, at 4. Thus, her argument regarding the treatment of the sample the CBP laboratory labeled as "inconclusive" in its country of origin analysis does not undermine the information contained in the affidavit, which supports a finding of

---

10. Claimant's arguments concerning the validity of the search and seizure warrant have already been addressed by the court. *See* ECF No. 157, at 8–13, *report and recommendation adopted*, ECF No. 172; ECF No. 187, at 5–6.

probable cause that the property was forfeitable.

Even taking Dr. Anderson's report into account, which the court is not obliged to do under the anti-ferret rule, the same does not discredit the evidence in front of the government at the time this action was instituted, such that—as a matter of law—probable cause did not exist. While the remainder of Dr. Anderson's report suggests that better methodology might exist for performing "country of origin" analysis and that it could not be shown to a 99% certainty that the property originated from the Dominican Republic, the court does not find that Dr. Anderson's report demonstrates the CBP laboratory could not determine that the samples it tested had a reasonable likelihood of originating from the Dominican Republic. The evidence contained in Agent Pillich's affidavit, of which the government had knowledge at the time it instituted the forfeiture proceedings in the case of caption, was probative to suggest that the property originated from the Dominican Republic, and thus was subject to forfeiture. It goes significantly further to suggest that the property in question was not from Puerto Rico "than simply arousing suspicion". *See One 1974 Porsche 911–S Vehicle Identification No. 9114102550*, 682 F.2d at 285. As previously noted, § 1615 dictates that probable cause for the institution of a forfeiture action is not a question of fact for the jury, but must be judged by the court. Based on the foregoing, the court finds that the government had sufficient evidence of forfeitability at the time it filed the complaint in the case of caption, such that probable cause existed to believe the property was subject to forfeiture under § 1595a. *See United States v. 863 Iranian Carpets*, 981 F.Supp. 746, 748 (N.D.N.Y.1997) (concluding government established probable cause that bundles consisting of 863 carpets were subject to forfeiture under § 1595a where U.S. Customs agents seized the carpets after finding that tags of some of the carpets indicated said carpets were made in Iran and federal regulation existed prohibiting importation of Iranian goods into the United States).

Because the court finds that the government met its burden to show probable cause that the property was subject to forfeiture under § 1595a, the burden shifts to claimant to show by a preponderance of evidence that the property is not subject to forfeiture. Claimant has failed to present evidence sufficient to create a genuine issue of material of fact sufficient to survive plaintiff's motion for summary judgment under § 1595a. Pivotal to claimant's argument that the property is not subject to forfeiture is the proposition that the coffee is Puerto Rican coffee—a proposition that claimant has not bolstered with citations to evidence in the summary judgment record.[11] ECF No. 278, at 3–4. Claimant

11. Claimant also cites to Mr. Colón's deposition testimony in support of the premise that "the property seized was not imported into the U8nited [*sic*] States.". ECF No. 278, at 5. In a conclusory, two-sentence paragraph claimant argues: "Nelson Collin states in his deposition that he had no evidence to support [that] the coffee was imported into the United States. Nelson Collin states in his deposition that he does not have any evidence that whether this coffee you sampled had been imported to the United States." *Id.* Viewing Mr. Colón's deposition testimony in the light most favorable to claimant for the purposes of summary judgment, this evidence does little to advance his burden of demonstrating that the property was not subject to forfeiture under § 1595a. The fact that Mr. Collin has no evidence to support whether the property was imported, without more, would not allow a rational factfinder to find that the property was not "stolen, smuggled, or clandestinely imported or introduced" into the United States in violation of § 1595a. 19 U.S.C. § 1595a(c)(1)(A).

states that "[t]he testimony of Daniel Omar Torres, Rafael García Pagan and Dr. Kim Anderson expert report [*sic*] establish that the coffee is Puerto Rican coffee. ECF No. 278, at 3. Once again, claimant cites to Dr. Anderson's report in general, without developing any argument regarding how her report supports his contention that the coffee is Puerto Rican coffee. ECF No. 5, at 2. As previously noted, "it is insufficient to merely refer to an exhibit in general." *Davila*, 550 F.Supp.2d at 238. Moreover, claimant does not articulate any argument regarding how Dr. Anderson's report establishes the property is Puerto Rican coffee. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and not put flesh on its bones. Instead, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Harriman v. Hancock Cnty.*, 627 F.3d 22, 28 (1st Cir.2010) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")) (internal citations omitted). Thus, the court finds that claimant has waived any argument regarding how Dr. Anderson's report supports the claim that the property is from Puerto Rico, by failing to so articulate in the materials before the court for the purposes of evaluating plaintiff's motion for summary judgment.

Even ignoring claimant's failure to cite to any specific page of Dr. Anderson's report or to articulate an argument regarding how the content of her report demonstrates the property is from Puerto Rico, the totality of her report is insufficient for a rational jury to find that claimant has met its burden of showing that the property is not subject to forfeiture. The focus of Dr. Anderson's report is on under-

mining the government's evidence that there is a 99% probability that the property originated from the Dominican Republic; she does not offer her professional opinion regarding the likelihood that the property is from Puerto Rico. *See* ECF No. 279–2. As previously noted, her report is not conclusive on the issue of the property's origin. The only portion of her report that offers any support for claimant's proposition that the property is from Puerto Rico is the section entitled "selective reporting." *Id.* at 4, 8–9. In this section, Dr. Anderson suggests that sample # 6—the sample the CBP chemist determined was of inconclusive origin—should have been classified as being from Puerto Rico. *Id.* In her opinion, "the methodology clearly classified the sample as from Puerto Rico, any value >50% (i.e. > 0.5) by the method is appropriately allocated to a group[,] in this case Puerto Rico (0.3012 DR, *0.6988 PR* )" *Id.* at 4 (emphasis in original).

■ Assuming, for the purposes of evaluating plaintiff's motion for summary judgment, that Dr. Anderson is correct that the CBP chemist improperly assigned sample # 6 as inconclusive in origin rather than as being from Puerto Rico, her report nonetheless fails to provide evidence from which a rational jury could find for claimant on this matter. The classification regarding this one sample does not alter the overall finding from the CBP report "that the remaining thirty two bags of coffee beans have a greater than 99% probability match with coffee beans from the Dominican Republic. *For these thirty two bags of coffee beans,* canonical discriminant analysis also results in a match with the coffee beans from the Dominican Republic." *ECF* 265–12, at 43 (emphasis added). Dr. Anderson's report does not constitute evidence "which not only puts the material facts in dispute, but which enables a trier

of fact to find that [claimant] has disproved the government's contentions by a preponderance of the evidence." *Parcels of Real Prop. With Bldg., Appurtenances & Improvements Known As 1933 Commonwealth Ave., Newton, Mass.*, 913 F.2d 1 at 3. The classification of the outlier among the thirty-three samples tested as being from Puerto Rico would not constitute evidence "sufficiently strong to support a verdict in [claimant's] favor." *Calero–Cerezo*, 355 F.3d at 19. Assuming claimant had articulated an argument regarding how this demonstrates the property is from Puerto Rico, which he has not done, his evidence in support of said argument would amount to little more than an indication that one sample tested correlated with Puerto Rican samples in the database, while thirty-two others correlated with samples from the Dominican Republic. This outlier would not enable a rational jury to find that the property was from Puerto Rico, rather than the Dominican Republic, upon which premise claimant rests its claim against forfeiture. Thus, a rational jury could not find claimant has met his burden of showing the property is not subject to forfeiture by a preponderance of the evidence.

The remainder of claimant's evidence offered in support of its contention that the property is from Puerto Rico, and thus not subject to forfeiture, consists of claimant's testimony and that of Mr. Rafael García Pagan ("Mr. García"). Claimant's own deposition testimony to which he cites indicates that he purchases coffee beans from farmers who have "beneficiados". ECF No. 279–1, at ll. 13–23. Claimant has admitted that when coffee is purchased from a "beneficiado" that sells coffee that has been grown by another grower who is different from the "beneficiado," it is impossible for him to determine from where the coffee originated. ECF Nos. 265, ¶ 18; 265–2, at 76, ll. 6–11; 279, ¶ 18. The fact

that claimant allegedly purchases coffee beans from farmers with "beneficiados," even if the sales take place within Puerto Rico, does little to affirmatively demonstrate that the coffee beans in question originated from Puerto Rico. Whatever speculative inference may be rationally drawn regarding the origin of the coffee beans from this allegation is undercut by the uncertainty regarding the origin of coffee beans that are purchased from a "beneficiado". Furthermore, no evidence has been presented to suggest that ICV purchased coffee beans exclusively from "beneficiados" or farmers that sell *only* coffee beans that they themselves have grown.

Mr. García's deposition testimony is similarly insufficient to create a genuine issue of material fact that would allow a rational jury to find that property originated from Puerto Rico, and thus is not subject to forfeiture under § 1595a. He indicates only that he goes directly to a "beneficiado" with claimant to purchase coffee beans. ECF 279–3, ll. 7–10. According to Mr. García, "it is our understanding that it's puerto rican [*sic*] coffee because there's not supposed to be any other coffee other than puerto rican [*sic*] coffee there." *Id.* at ll. 12–14. Upon being asked if there is any way he can test or verify that the coffee beans do in fact originate from Puerto Rico, claimant responded: "For me coffee is coffee. I don't have a way of knowing whether it's from Puerto Rico or not, green coffee is green coffee." *Id.* at ll. 15–24. Overall, far from establishing that the property originated from Puerto Rico, Mr. García's deposition testimony tends to cast doubt on said contention, suggesting that he is not sure of the property's origin.

Overall, claimant's contention that the property originated from Puerto Rico—upon which his claim that the property is

not subject to forfeiture under § 1595a rests—is not supported by evidence in the record. Since claimant bears the burden of showing by a preponderance of evidence that property is not subject to forfeiture, he "must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." *McCarthy,* 56 F.3d at 315. Claimant has failed to do so; his evidence is speculative and conclusory, at best. That one sample out of thirty-three tested revealed a greater than 0.5 probability of being from Puerto Rico is not sufficient to create a genuine dispute about the origin of the property, let alone enable a rational factfinder to find that by a preponderance of the evidence claimant has disproved the government's evidence that the property originated from the Dominican Republic. *See Parcels of Real Prop. With Bldg., Appurtenances & Improvements Known As 1933 Commonwealth Ave., Newton, Mass.,* 913 F.2d 1 at 3. Any conclusion that the coffee is from Puerto Rico from the deposition transcripts to which claimant cites also would not be rationally drawn—the inferences that would be required are far too vast to support it. Viewing claimant's evidence in the light most favorable to him as the non-moving party, no rational jury could find that claimant has met his burden of showing by a preponderance of the evidence that the property in question is Puerto Rican coffee and thus find in favor of claimant under § 1595a. Thus, claimant has cannot survive the government's motion for summary judgment on this claim and the property must be forfeited to the United States. *See 863 Iranian Carpets,* 981 F.Supp. at 748 (finding the 863 carpets at issue were forfeitable to the United States where claimant failed to proffer evidence as to the carpets' origin to successfully rebut the government's evidence that the carpets were made in Iran and thus were subject to forfeiture under § 1595a).

## C. Previously Addressed Claims

Plaintiff's arguments in Section V(D) and (E), ECF No. 264, at 14–20, concerning due process and the Dominican Republic–Central America Free Trade Agreement ("CAFTA–DR"), are moot as the court has already addressed them. Claimant's arguments under the U.S. Constitution—including the Fourth, Fifth, and Fourteenth Amendments—and CAFTA–DR have already been rejected by this court. *See* ECF No. 157, at 5–15 ("The third-party complaint this fails to set forth any plausible Fifth Amendment violation, and it is recommended that judgment be entered for third-party defendant on this claim ... CAFTA–DR provides absolutely no basis for third-party plaintiff to challenge the Commonwealth's taxation or other regulation of coffee imports from the Dominican Republic, nor any actions undertaken to enforce such regulations. It is thus recommended that judgment be entered for third-party defendant on this frivolous claim."), *report and recommendation adopted,* ECF No. 172.

Plaintiff also contends that claimant should not be permitted to assert the innocent owner defense under CAFRA. ECF No. 264, at 12–14. Claimant, however, makes no mention of the innocent owner defense in any of the four submitted joint proposed pretrial orders. *See* ECF Nos. 142; 202; 206; 255. Moreover, the only mention of the innocent owner defense in claimant's answer to the complaint relates to "the fact that the coffee beans may be from the Dominican Republic and entitled to 'Most Favored Nation Status'" pursuant to CAFTA–DR. ECF No. 9 ¶¶ 3, 6. As discussed above, claimant's arguments under CAFTA–DR have already been addressed by the court.

## V. CONCLUSION

In cases in which the government asserts multiple causes of action seeking for-

feiture of a particular piece of property, it need only prevail on its legal theory under one of the provisions in order to seize the property in question. *See Davis,* 648 F.3d at 98 (affirming District Court's judgment providing that the property at issue be forfeited to the government where the claimant in that case had prevailed on government's claim for forfeiture under 18 U.S.C. § 981(a)(1)(C) and the government prevailed on claim for its forfeiture under § 1595a(c), because the claimant's partial victory at summary judgment "did not entitle her to retain ownership" of the property in question).[12] Although a genuine issue of material fact remains with respect to plaintiff's forfeiture claim under § 545 entitling claimant to defeat plaintiff's summary judgment motion on said cause of action, since claimant has not presented evidence from which a rational factfinder could find in claimant's favor under § 1595a, the property is forfeitable to the government under said provision. Assuming, *arguendo,* that claimant were able to demonstrate at trial that plaintiff had not met its burden under § 545 the outcome would be the same—the government would be entitled to the property under § 1595a—rendering a jury trial on § 545 moot. Based on the foregoing analysis, plaintiff's motion for summary judgment,

12. The procedural posture resulting in the decision affirmed in *Davis* differs from that of the case of caption; however, the Second Circuit's reasoning regarding conflicting judgments on alternative claims for forfeiture is nonetheless instructive. *See United States v. Painting known as Le Marche,* 06 CIV. 12994(RJS), 2010 WL 2229159 (S.D.N.Y. May 25, 2010) *aff'd sub nom. United States v. Davis,* 648 F.3d 84 (2d Cir.2011). In *U.S. v. Painting known as Le Marche,* the United States District Court for the Southern District of New York (the "District Court") granted the claimant's motion for summary judgment under § 981(a)(1)(C) and denied both the government and the claimant's motions for summary judgment under § 1595a(c). *Id.* at *1.

ECF No. 264, is hereby **GRANTED** and the property shall be forfeited the government.

**IT IS SO ORDERED.**

The government's § 1595a claim proceeded to a jury trial, which resulted in a unanimous verdict in its favor. *Id.* As a result the District Court "entered a judgment providing that (1) Claimant prevailed on the § 981(a)(1)(C) claims, (2) the government prevailed on the § 1595a(c) claim, (3) the artwork would be forfeited to the government....". *Id.* In the case of caption, although the government has prevailed on its claim for forfeiture under § 1595a at the summary judgment stage rather than at trial, the result that a claimant's partial victory at summary judgment on one alternative cause of action for forfeiture does not entitle said claimant to retain the property in question is applicable.